**Rafael COLON, Plaintiff,**

v.

**TRINIDAD CORPORATION, Defendant.**

United States District Court
S. D. New York.

Oct. 27, 1960.

Decision Amended Dec. 5, 1960.
See 188 F.Supp. 803.

98

Benjamin Glickman, New York City, for plaintiff. Jacob Rassner, Theodore H. Friedman, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendant. John L. Quinlan, John B. Shields, New York City, of counsel.

SUGARMAN, District Judge.

Rafael Colon, a seaman, sues Trinidad Corporation for damages for personal injuries sustained in two accidents aboard the S. S. Tillamook owned by defendant and for maintenance and cure. A claim for damages for defendant's alleged failure to treat plaintiff was abandoned before trial.

On November 25, 1957, while plaintiff was engaged in chipping the bulkhead at the bilges, he slipped and fell, striking his neck on an adjacent pump.

Plaintiff's trial theory was that:

"Plaintiff was working in the port bilge, below the level of the engine room floor, in a narrow portion of the shaft alley. His work consisted of chipping and painting the bulkhead. The floor of the area in which he was required to work was awash with three or four inches of water, which water included particles of rust.

"In an effort to complete his work assignment, and yet keep his feet out of the wet and slippery portion of the bilge, he obtained a dry turpentine can on which he could stand while working on the bulkhead. While doing his chipping and painting work, he fell off the turpentine can, striking the back of his neck on a bilge pump which protruded in the work area."

The court did not have the benefit of plaintiff's presence at the trial. His evidence was given by reading parts of his deposition upon oral examination.

Photographs of the area received in evidence (Defendant's F–J, inclusive) coupled with the testimony of Everett E. Grover, Chief Engineer on the "Tillamook" when plaintiff was injured, an experienced mariner whose testimony I be-

lieve, show that plaintiff's theory is unacceptable.

It would have been physically impossible for plaintiff to stand on the can while chipping and sweeping up rust as claimed.

The bilges were dry. That plaintiff had a can in the confined area of the bilge where he was working is undisputed. The totality of the evidence impels the inference that for his own convenience and comfort plaintiff had, on his own, procured and used the can as a seat while pursuing his task of chipping the rust and scale. When it came time for him to go for his coffee, he stepped on the can in order to facilitate his ascent from the floor of the bilges to the floor of the shaft alley. The distance between the two levels last mentioned was about three feet. The can gave way under him, either slipping or collapsing.

This is largely consistent with plaintiff's own deposition which also shows the implausibility of his theory of trial:

"Q. Well, were you actually chipping or had you started to remove the matter that you described as rust? A. I was taking it out, gathering it up.

"Q. Exactly what were you doing with the matter? Were you sweeping it up or were you picking it up in a dustpan or similar tool? You made a motion with your hands which indicated something of that sort. A. With a pan which would pick up this matter, this waste.

"Q. Were you bending over at the time you slipped or were you standing up straight? A. When I was standing up. It is a very narrow space there. I was picking up this waste matter and when I was standing up that is when it happened; that is when I slipped.

"Q. And did you slip on water? A. No; on top of a can, a kerosene can.

\* \* \* \* \* \*

"Q. Will you explain that, please? A. Can I show you just exactly how it was? (Showing) I had the kerosene can lengthwise on the floor and in order not to get wet I was leaning against it in a seated position and chipping at that time.

\* \* \* \* \* \*

"Q. Mr. Colon, your attorney has advised me that your claim is that you were working in the bilge. Is that right? A. Yes.

"Q. Now, as you were working in the bilge, tell me how your use of that kerosene can would prevent you from getting wet. A. I put it down on the floor of the bilge and then I put my foot on it.

"Q. A short while ago you said you were leaning on it or more in a sitting position on it. Now, which is it? A. I was just using it as a base so as not to get my feet wet."

There is no evidence that defendant was under the obligation to furnish plaintiff with any mechanical means of exit from this place of work, either in the exercise of reasonable prudence under the negligence count or under the absolute duty to provide a *reasonably* seaworthy vessel under the unseaworthiness count.

Judgment shall be entered for defendant on the first "cause of action".

In his second "cause of action", plaintiff claims damages for injuries sustained on the same vessel when on December 16, 1957 he alleges he fell on a slippery portion of a deck passageway injuring his left thigh and straining a muscle.

In his trial memorandum of "Applicable Law", plaintiff's counsel states:

"Absolute liability is imposed on a ship owner for injuries rising due to a slippery condition aboard the vessel. Mitchell v. Trawler Racer, Inc., [362 U.S. 539] 80 S.Ct. 926 [4 L.Ed.2d 941] (1960)."

In this respect plaintiff is far in advance of the Supreme Court in converting the FELA, 45 U.S.C.A. § 51 et seq., and the Jones Act, 46 U.S.C.A. § 688, into a workmen's compensation statute. A "scintilla" of evidence on which

to base a finding of negligence or unseaworthiness [1] is still required.

The court finds no persuasive evidence from which it could reasonably infer that defendant was negligent or that the vessel was unseaworthy on December 16, 1957 when plaintiff claims he slipped while proceeding along an alleyway of the Tillamook.

Plaintiff's account of the occurrence is confused and conjectural. I am not persuaded that the condition described, if it existed, was the result of anybody's negligence, or that its presence made the vessel unseaworthy.

"What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354.[2]

In other words, a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery. Plaintiff has not proven to my satisfaction that the area where he claims he fell was in fact slippery, much less that such a condition if present was not normally and reasonably expectable under a standard of reasonable fitness.

It seems only fair that men who make their livelihood on the water can be expected to cope with some of the hazardous conditions that must prevail even on a seaworthy vessel. Any stricter rule would require the intervention of traveling companions to guide and protect sailors in going about the vessel to perform their duties.

The defendant shall have judgment on the second "cause of action".

On the third "cause of action", I find that the plaintiff had sustained a severe injury when he fell from his hammock in 1955, prior to his service on the Tillamook.

Plaintiff had recovered from this injury, however, when on November 25, 1957, he struck his neck against the bilge pump while in the performance of his duties as a wiper aboard the Tillamook.

This injury, sustained while "in the service of the ship", resulted in a reactivation of his 1955 injury. It entitles him to his wages to the end of the voyage and maintenance and cure until his maximum recovery was attained. I find that maximum recovery was attained on September 27, 1958 when it was certified by the Public Health Service Hospital that:

"Pt. [Patient] recently hospitalized * * * subluxation of cerv. [cervical] spine. Complaining of neck pain.

"There is little that can be done for this pt. [patient] other than

"1. cerv. [cervical] traction

"2. collar—later

"3. last resort—fusion.

"Will start now on cerv. [cervical] tract. [traction]."

A course of cervical traction was prescribed and administered.

Defendant will of course be credited with wages and maintenance paid plaintiff, other wages earned by him, if any, and time spent by him as an in-patient during this period. If counsel cannot agree upon these items they shall advise the court thereof and the court will compute them.

This decision is the court's findings of fact and conclusions of law.

Settle judgment accordingly.

[1]. See Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 332, 78 S.Ct. 758, 2 L.Ed.2d 799.

[2]. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941.