**Eddie L. SHANNON, Plaintiff,**

v.

**The S/S ULUA, her engines, tackle, furniture and apparel, and United Fruit Company, Defendants.**

**No. CA 67–1003.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 7, 1968.

James H. Leveque, III, New Orleans, La., for plaintiff.

C. Brooks Morris, Shelly M. Barto, Attys., United Fruit Co., New Orleans, La., for defendants.

CASSIBRY, District Judge:

This is an action by a longshoreman against a shipowner for damages for per-

sonal injuries allegedly sustained while loading cargo onto an unseaworthy vessel.

■ The plaintiff was employed by United Fruit Company as a longshoreman aboard one of its ships, the S/S ULUA, on February 13, 1960 when he slipped and fell against a pipe, which he was assisting in loading aboard the ship, injuring his right knee. The United Fruit Company as stevedore—employer paid the plaintiff compensation in the amount of $7,102.61, and he brought this action for damages also on July 17, 1967 against the company as owner of the ship and based on unseaworthiness of the ship. The right to bring such an action when the employer is both stevedore and shipowner was recognized in 1963 in Reed v. Steamship Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448.

The plaintiff claims that the ship ULUA was unseaworthy because the grating type floor on which he was working to load the pipes and push them into place was slippery with snow. He started to work on the ULUA at the Thalia Street Wharf in New Orleans at 8:00 A.M. loading large steel pipes into the lower hold at the Number 3 hatch. The opening of the hatches down to the lower hold took about fifteen minutes and the loading of the pipe then commenced. The pipe was brought aboard the ship in slings moved by the ship's winches, and after it was lowered into the hold one end was unhooked, rollers put on it and the longshoremen working in the lower hold pushed it forward for storing. The men were working on flooring of unfinished wooden grating consisting of slats about 3 inches wide and about one and one-half inches apart. At about 9:30 or 10:00 o'clock while the plaintiff was pushing on the pipe his feet slipped and he fell hitting his right knee against the pipe. He reported the accident to his foreman, Eddie Mader, and to the timekeeper, then went back to work until the crew knocked off at about 11:30 A.M.

The defendant denied liability and pleaded also that the plaintiff's claim is stale and barred by laches. In addition, by special motion, the defendant in advance of trial moved to dismiss the complaint on the ground of laches. After hearing argument on this motion the court concluded that factual determinations were so involved in the laches defense that the wise course was to defer ruling on the motion until after the case was heard on the merits.

## LACHES

■ The defense of laches in an admiralty suit can be sustained only if the delay in instituting suit is inexcusable and prejudice resulted to the defendant from such delay. Point Landing Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861 (5 C.A. 1958); Pure Oil Co. v. Snipes, 293 F.2d 60 (5 C.A. 1961); Vega v. The Malula, 291 F.2d 415 (5 C.A. 1961); Crabtree v. The SS Julia, 290 F.2d 478 (5 C.A. 1961). The defendant contends that both elements necessary for the defense are present in this case. The plaintiff admits that the analogous limitation period for an unseaworthiness claim is 3 years and that he has the burden of showing excusable delay and lack of prejudice to the defendant.

### Inexcusable Delay

■ The plaintiff has no excuse for delaying the institution of this suit for more than seven years and five months after the injury except his explanation that until recently he was unaware of his right to sue the United Fruit Company. Mistake as to the law regarding the right to sue was held not to be an excuse for delay in bringing suit in Akers v. State Marine Lines, Inc., 344 F.2d 217 (5 C.A. 1965). The plaintiff argues that something more than a mistake of law is involved here because the plaintiff was unaware of the fact that the decision in Reed v. Yaka, supra, had been rendered and that a layman should be given some time to learn of such changes in the law. No room for such an argument is found in the language in the Akers case:

"Appellant's mistake as to the law or his unwillingness to press his claim

when there was authority which indicated he might not prevail, cannot serve to excuse his delay in prosecuting the libel.  *   *   * ”

Akers v. State Marine Lines, supra 344 F.2d at p. 220.

The delay was inexcusable in this case.

### Prejudice

■ The defendant urges that the delay in this case was so long that the court should hold as a matter of law that there is a conclusive presumption of prejudice here. Inasmuch as the evidence on the matter of prejudice was heard by the court it is not necessary to pass upon this contention of defendant.

None of the officers or crew of the vessel was present when the injury occurred. Before the decision in Reed v. Yaka, supra, the United Fruit Company did not make an investigation of any accidents, except the most serious, in anticipation of a third-party claim. An investigation was made only insofar as the company was stevedore-employer for the purpose of determining if the injury occurred in the course and scope of the employment. The defendant argues that it was at a disadvantage in asserting defenses in this case because the company as shipowner had no notice of the injury and made no investigation of it from the viewpoint of defending a claim for damages. The prejudice to the defendant from this lack of investigation is obvious, but that prejudice did not result from the plaintiff's delay in bringing suit. This prejudice does serve, however, as will be demonstrated, to magnify or enlarge the prejudice which did result from the delay.

The only men present when the injury occurred were Shannon and seven of his fellow longshoremen. Sam Castle, James Banks and Richard McCarvey testified for him on the trial of the case. George Heebe has died and the others according to Shannon were not regular workers. The identity of the other longshoremen were in the timekeeper's records, but those records, according to Mr. Brooks

Morris, the local claims manager for United Fruit, are not kept more than 5 years and they are no longer available. This inability to determine who the other men were in the hold on the day of the accident does result from the delay, and is prejudicial, and its importance is magnified by the fact that the defendant as shipowner made no investigation of the accident.

If such an investigation had been made, the unavailability of these witnesses might have little importance, but the defendant under the circumstances of this case would want to examine these witnesses regarding the incident as it did Castle, Banks and McCarvey because those present are the only ones who can give any information as to the condition of the hold on that day. The prejudice resulting from the unavailability of these witnesses under these circumstances is substantial.

Edward Mader, the foreman of Shannon's crew, now a retired employee, testified on behalf of the defendant, but he was not present when the injury occurred and he could not even recall that the men were working on grating and could remember nothing regarding its condition. The witnesses for the plaintiff also were unable to recall many of the circumstances relating to the accident.

The unavailability of witnesses present when the injury occurred and the unreliable memory of witnesses caused by the long delay are sufficient to show prejudice so that the plaintiff has failed to overcome the presumption of prejudice and the defense of laches is a valid one in this case. This would conclude the litigation in favor of the defendant, but inasmuch as the case was tried on the merits and to avoid the possibility of subsequent necessity for determination of liability, the court will give its view on that issue also at this time.

### LIABILITY

■ The plaintiff contends as a basis for liability that the flooring on which he was loading cargo was so slippery

from the snow falling down through the hatch that the ship must be regarded as unseaworthy, and that relevant to the neglect of the shipowner is 29 CFR sec. 1504.91(c) (Safety and Health Regulations for Longshoring) which requires that slippery conditions shall be eliminated as they occur. Plaintiff recognizes that these regulations became effective in 1961, after the injury occurred in this case, but argues that they were a codification of good industry practice and are therefore relevant here, although strictly speaking it could not be said that the defendant violated the regulation in this case.

Long delay in bringing a suit may result in prejudice to a plaintiff in proving his claim equally as serious as the prejudice to a defendant in defending the claim. This is especially true when, as in this case, the memory of the witnesses is relied upon to prove the existence of a condition more than seven years previous to the trial. When the court questioned one of plaintiff's witnesses and fellow workmen, Sam Castle, regarding the discrepancies in his testimony on deposition and at the trial on the matter of whether Shannon had returned to work after reporting the injury, he explained that *it had been so long* he *couldn't exactly remember*. James Banks in deposition before trial stated, when urged to recall the exact weather conditions and whether he saw any snow stacked up, that he couldn't remember exactly what the weather conditions were "that far back," and he had a hard time "to remember something that long." Richard McCarvey testified that he could recall few of the particulars of the work that day, and in a statement made to defendant on January 3, 1968 he said that he recalled the injury to Shannon, but could recall little else, and that it happened so long ago that he was lucky to remember it at all.

Under these circumstances it is difficult for the court to give much weight to the witnesses' testimony as reflecting the actual condition of the grating on that day. The U. S. weather report for New Orleans for the month of February

1960, introduced by plaintiff, shows that .03 inch of snow fell in the general area of the wharf between 8:00 A.M. and 10:00 A.M., melting as it fell. Regarding the weather that morning Sam Castle testified that it was snowing a little, the weather was damp and it was kind of damp down in the hold, but he couldn't recall any snow being on the grating. When asked how damp it was he said it was real damp because it was cold. On the trial of the case he said that no snow was piling up, the snow just made the grating wet and damp.

Richard McCarvey remembered on the trial that it was snowing and the grating was damp. James Banks in his deposition said that he wouldn't say it was snowing, but it was snowy-like weather. On the trial he testified that he didn't see any snow at all that day, but knew that it was a "soft" day which he explained to be misty and damp.

Edward C. Mader, foreman, defendant's witness recalled on deposition that the day was cold with a kind of a mist. On the trial he said he didn't recall any rain or snow, just dreary New Orleans weather.

The extent of the slipperiness of the grating caused by this snow, mist or dampness was variously described by the witnesses. Sam Castle testified on deposition that he had no trouble walking on the deck but he explained that it is necessary to be particular how you walk when it's damp on the deck because "you can slip." On the trial he testified that the grating was wet, slippery and troublesome to walk on and somebody complained about it.

James Banks said on his deposition that he didn't know if Shannon got "overbalanced or slipped or what happened." When he was asked if he saw what made Shannon fall he said, "Mister, anything can make you fall in a ship's hold like that, anything. You could be pushing and the load goes easier than you think it's supposed to go, you can fall that way, it could back up on you and make you fall, it's a possibility a man's falling any

time." On the trial he testified that it was wet and damp all over the hatch, but he couldn't remember how slippery it was. It might not be slippery to him and slippery to someone else he said, but he finally testified that he had trouble walking because of the wet grating. He made no protest of the condition and no complaint was made to the foreman, but the workers talked among themselves.

Richard McCarvey testified that the grating was a "little slippery" and he had to be particular, but he made no complaint, just talked about it with other workers. Edward Mader recalled that the weather could have caused some slipperiness, but not enough to prevent the men from working, and no complaints were made to him at all about any hazardous condition.

The plaintiff, Eddie Shannon, testified on deposition that it was snowing very hard that day and there was lots of snow falling, though not enough to build up on the grating. It was real wet and slippery, too wet to be working he said and, although they had no contract permitting them to stop working because of snow, it was too wet to be working and a delegate from the union came and knocked them off after his accident. On the trial he also testified that it was snowing, sometimes heavier than others, and as the snow melted it made the grating slippery, and he complained but had to continue working. According to him a union delegate finally caused them to knock off because of the slippery condition.

To sustain his contention that the grating was very slippery, the plaintiff sought to prove that a union delegate did come to knock them off before noon of that day because of the slippery condition of the grating. Castle, Banks and McCarvey all testified that a union delegate came to knock them off at or near noon. Castle had testified in his deposition that he didn't recall knocking off from work because of the moisture. He thought that they had finished loading the ship.

Foreman James Mader said that he couldn't recall that the union delegate had

come to knock off the men loading the ship. The log of the ship introduced into evidence by the defendant shows no such occurrence, and a crew member Stanko Gazetti in whose handwriting a portion of the log entries for that day appears testified that, if the loading crew had been knocked off on account of weather, it would have been noted in the log. The log book entry indicates that at 11:30 A.M. hatches number 2, 3 and 4 were finished and all cargo loaded. Gazetti said that if the log book says "all cargo loaded" that means all cargo destined for the ship was loaded. The court finds that the plaintiff failed to prove that the loading crew was knocked off on account of weather conditions before all the cargo destined for the ship was loaded.

The court concludes that the most that was proved in regard to the slippery condition of the grating was that the grating was damp and slippery enough to cause the workmen to be particular about their footing, but the condition was not slippery to the extent that the ship could be called unseaworthy, and it was not a condition requiring any steps to be taken by the ship owner to eliminate it.

■ The owner of a vessel is not obligated to furnish an accident-free ship. It has only the duty to furnish a vessel and appurtenances reasonably fit for their intended use. Mitchell v. Trawler Racer, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941; Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354. In Colon v. Trinidad Corporation, 188 F. Supp. 97 (S.D.N.Y.1960), where a seaman contended that a deck slippery from water caused the ship to be unseaworthy, the court was of the view that not all slipperiness makes a ship unseaworthy. It said: "A seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery. * * * It seems only fair that men who make their livelihood on the water can be expected to cope with some of the hazardous conditions that must prevail even on a seaworthy vessel."

The question of whether the grating was unreasonably slippery in this case is a relative matter, and in my opinion the plaintiff has failed to prove that it was unreasonably slippery, and the ship cannot be regarded as not reasonably fit for the loading of cargo. The proof in this case is not convincing that the hazard here was sufficiently great that the departure from a condition of absolute safety was enough to impose liability for unseaworthiness.

The plaintiff's claim should be denied.