Isiah TATE, Plaintiff,

v.

**A/B SVENSKA AMERIKA LINEIN,**
Defendant and Third-Party
Plaintiff,

v.

**STRACHAN SHIPPING COMPANY,**
Third-Party Defendant,

(American Mutual Liability Insurance
Company, Intervenor).

Civ. A. No. 69–816.

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 25, 1970.

Owen J. Bradley, New Orleans, La., for plaintiff.

Joe M. Inabnett, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

McClendon & McClendon, Stuart A. McClendon, TA for American Mut. Liability Ins., and Strachan Shipping Company, intervenor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DIRECTION FOR ENTRY OF JUDGMENT

GIGNOUX, District Judge, sitting by designation.

This is an action by a longshoreman to recover damages for personal injuries claimed to have been sustained by him while unloading cargo from the defendant's vessel, the SS Svaneholm, on July 23, 1968, while the vessel was docked in the Mississippi River at New Orleans. Plaintiff alleges that his injuries were caused by the defendant's negligence and the unseaworthiness of its vessel. Defendant has impleaded as third-party defendant the plaintiff's employer, Strachan Shipping Company, seeking indemnity, costs and attorney's fees. American Mutual Liability Insurance Company has intervened for compensation and medical expenses paid to and on behalf of plaintiff.

The action was tried to the Court without a jury on April 13, 14 and 15, 1970, and counsel have filed written briefs and presented oral arguments in support of their respective positions.

Having now considered the evidence presented by the parties and the written and oral arguments of counsel, the Court makes its findings of fact and conclusions of law and directs entry of its judgment as follows:

## FINDINGS OF FACT

The Court's findings of fact are:

1. At all times material hereto, the plaintiff, Isiah Tate, was a resident of Kentwood, Louisiana, and employed as a longshoreman by the third-party defendant, Strachan Shipping Company. On July 23, 1968, plaintiff was about 40 years old and had had over 20 years experience as a longshoreman on the New Orleans waterfront.

2. At all times material hereto, the SS Svaneholm was an ocean-going general cargo ship owned and operated by the defendant, A/B Svenska Amerika Linein, and was docked in the Mississippi River at the Port of New Orleans.

3. At all times material hereto, the intervenor, American Mutual Liability Insurance Company, was the compensation insurer of Strachan Shipping Company. Intervenor has paid compensation benefits and medical expenses of $478.01 to and on behalf of plaintiff.

4. On Monday, July 22, 1968, at approximately 8:00 a. m., pursuant to a contract between A/B Svenska Amerika Linein and Strachan Shipping Company to perform stevedoring operations aboard the SS Svaneholm, plaintiff and the other members of his gang commenced discharging cargo from the lower hold of hatch No. 1 aboard the SS Svaneholm. After rigging the gear, the longshoremen unloaded bundles of bicycle tires until 5:00 p. m. There were two work stoppages during the day because of sudden summer rain showers, the first occurring between 9:45 and 11:00 a. m. and the second between 1:00 and 3:45 p. m. On each occasion, in accordance with general practice, the longshoremen climbed out of the hatch and went ashore, and in order to prevent damage to the cargo, the ship's crew closed the hatch covers as soon as the longshoremen were free of the hatch. During the interval while the longshoremen were climbing out of the hatch and before the hatch covers were closed, rain fell into the hatch wetting the cargo and the walking boards upon which the longshoremen were working. In each instance, the hatch covers were opened and the longshoremen returned to work when the rain ceased.

5. The SS Svaneholm was equipped with MacGregor-type hatch covers con-

sisting of interconnected pontoons on rollers. When the hatches are opened, the pontoons retract in an accordian-like fashion at one end of the hatch. To be closed, they are drawn over the hatch by a single line run to the ship's winches. On July 22, 1968, the lines to draw the hatches closed were rigged alongside each hatch so that they could be immediately closed. During the two showers which occurred on July 22, 1968, the ship's crew closed the hatch covers on hatch No. 1 as soon as the longshoremen had cleared the hatch without any unreasonable delay.

6. On Tuesday, July 23, 1968, at approximately 8:00 a. m., plaintiff and his gang reentered hatch No. 1 and commenced discharging quarter drums of arsenic salt from the lower hold. The stow of drums extended forward from the after bulkhead to approximately three to five feet beyond the after coaming of the hatch square. There were about seven tiers of drums, each tier being separated by walking boards. Each drum was approximately 31 inches high and weighed between 200 and 225 pounds. The walking boards were approximately 2½ feet wide, 10 feet long and 1½ inches thick and were laying across the ship, or burdened. They were of plywood construction with an unfinished surface and were in good condition. The boards were damp from the previous day's rain and some rain water had accumulated in the rims on the tops of the drums which had been stowed in the square of the hatch and for about five feet under the coaming.

7. In discharging the drums, plaintiff and his partner would break the drums down on the round and roll them forward on the walking boards up a slight incline to pallet boards in the square of the hatch. The drums would then be placed on a pallet board by two other members of plaintiff's gang prior to being lifted from the hold.

8. Prior to plaintiff's accident, the longshoremen had unloaded, without difficulty, the first tier of drums to a point

approximately 10 feet under the hatch coaming. Sometime between 9:30 and 10:00 a. m. plaintiff had broken a drum down on the round and was rolling it, with both hands on the drum, toward the pallet boards in the square of the hatch. His feet slipped out from under him, and he fell forward striking his chest on the drum. He was slightly dazed, but after a few minutes was able to climb the ladder out of the hold. After plaintiff left the hold, the longshoremen continued discharging the drums without incident.

9. At the time of plaintiff's accident, the walking boards were wet from the previous day's rain and from rain water which had collected in the rims of the drum tops and which had spilled onto the walking boards when the drums were broken down. Plaintiff's fall was the result of his loss of footing occasioned by the rain water which had made the walking boards more slippery than they would have been if they had been completely dry. Neither before nor after plaintiff's accident did plaintiff or any member of his gang complain of any slippery condition, request sawdust or ask that any other step be taken to remedy any slippery condition which may have existed.

## DISCUSSION

*Plaintiff's Claim.* It is clear, as the parties concede, that the sole cause of plaintiff's accident was the presence of rain water on the walking boards upon which he was working. Plaintiff contends that the slippery condition of the walking boards resulting from the presence of the rain water rendered the vessel unseaworthy. Plaintiff also contends that defendant was negligent in not taking steps to eliminate the slippery condition, in failing to furnish plaintiff with a reasonably safe place in which to work, and in violating Section 1504.-91(c) of the Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504.91(c), which requires "that slip-

pery conditions should be eliminated as they occur."[1] The Court cannot agree.

 A shipowner owes to a longshoreman, as well as to a seaman, an absolute, continuing, and non-delegable duty to provide a seaworthy vessel and appurtenances. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).[2] The shipowner's duty to furnish a seaworthy vessel does not, however, require him to provide an "accident-free" ship. His duty is "only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Mitchell v. Trawler Racer, 362 U.S. 539, 549–550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960); Marshall v. Ove Skou Rederi A/S, 378 F.2d 193, 196 (5th Cir.), cert. denied, 389 U.S. 828, 88 S.Ct. 86, 19 L.Ed.2d 84 (1967); Vickers v. Tumey, 290 F.2d 426, 433, n. 5 (5th Cir. 1961).

 Applying the foregoing doctrine, the courts have consistently held that the mere presence of rain water, snow or sleet upon the deck or other exposed areas of a vessel does not render the vessel unseaworthy or create a condition requiring the owner to take corrective measures. Such conditions are reasonably expectable and unavoidable incidents of shipboard life, and unless the working surfaces of a vessel are found to be unreasonably slippery, the shipowner is not liable for breach of his warranty of seaworthiness or for negligence. Nor can it reasonably be contended that the failure of the owner to

eliminate a slippery condition resulting from unavoidable exposure to the elements for a brief period of time, is without more, a violation of the safety regulation upon which plaintiff relies. In Shannon v. SS Ulua, 285 F.Supp. 16 (E.D.La.1968), a case in which a longshoreman contended that a grating-type floor in the lower hold of a vessel which was slippery with snow caused the ship to be unseaworthy, this Court held:

> The question of whether the grating was unreasonably slippery in this case is a relative matter, and in my opinion the plaintiff has failed to prove that it was unreasonably slippery, and the ship cannot be regarded as not reasonably fit for the loading of cargo. The proof in this case is not convincing that the hazard here was sufficiently great that the departure from a condition of absolute safety was enough to impose liability for unseaworthiness. Id. at 21.

In Santamaria v. The SS Othem, 272 F.2d 280 (2d Cir. 1959), the court agreed with the ruling of the court below "that a deck made slippery by rainwater does not constitute an unseaworthy condition." Id. at 281. In Colon v. Trinidad Corporation, 188 F.Supp. 97 (S.D.N.Y. 1960), the court denied recovery to a seaman who contended that a deck passageway slippery from rainwater caused the ship to be unseaworthy and the owner to be negligent. The court said,

> * * * [A] seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery. * * * It seems only fair that men who make their livelihood on the water can be expected to cope with some

1. Plaintiff's further contention that defendant was negligent because the crew delayed an unreasonable time in closing the hatches during the rain showers of July 22 is not supported by the evidence. See Finding No. 5, supra.

2. A longshoreman's right to recover from the shipowner for failure to provide a seaworthy vessel is in addition to, and supplemented by, his right to recover in negligence. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 413–414, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Seas Shipping Co. v. Sieracki, supra, 328 U.S. at 107, 66 S.Ct. 872 (Stone, C. J., dissenting); Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 127, n. 2, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

of the hazardous conditions that must prevail even on a seaworthy vessel. Any stricter rule would require the intervention of traveling companions to guide and protect sailors in going about the vessel to perform their duties. *Id.* at 100.

*See also* Denaro v. United States, 337 F.2d 275, 276 (2d Cir. 1964); Lieberman v. Matson Navigation Company, 300 F.2d 661 (9th Cir. 1962); Connorton v. Harbor Towing Corporation, 237 F. Supp. 63 (D.Md.1964), *aff'd,* 352 F.2d 517 (4th Cir. 1965); Garrison v. United States, 121 F.Supp. 617 (N.D.Cal.1954); Daniels v. Pacific-Atlantic S. S. Co., 120 F.Supp. 96, 98 (E.D.N.Y.1954).

■ In the present case, plaintiff has failed to prove that the presence of rain water upon the walking boards where he fell was not an unavoidable normally and reasonably expectable condition, or that it rendered the walking boards so unreasonably slippery that defendant's vessel was not reasonably fit for the discharge of cargo. Under established principles, he has not shown that his fall was caused by any negligence of the defendant shipowner or unseaworthiness of its vessel.

■ *Third-Party Claim.* Although there are differences of opinion in the circuits, under the law of this Circuit defendant is entitled to recover of the third-party defendant its reasonable costs and attorney's fees incurred in successfully defending this action. Hill v. Flota Mercante Grancolombiana, S.A., 267 F.Supp. 380, 383–384 (E.D.La.1967), *aff'd per curiam,* 405 F.2d 878, cert. denied, 395 U.S. 934, 89 S.Ct. 1995, 23 L. Ed.2d 449 (1969). *Accord,* Arista Cia. DeVapores, S.A. v. Howard Terminal, 372 F.2d 152 (9th Cir. 1967), *rev'g,* 247 F.Supp. 710 (N.D.Cal.1965). *Contra,* Denaro v. United States, *supra,* 337 F.2d at 277; Rederi A/B Dalon v. Maher,

303 F.2d 565, 567 (4th Cir. 1962); Filetti v. Thorden (E.D.N.Y.1966) (unreported opinion noted in Norris, Maritime Personal Injuries, 2d Ed., 1969 Supp. at 176).

## CONCLUSIONS OF LAW

The Court's conclusions of law are as follows:

1. This Court has jurisdiction of the action and of the parties thereto.

2. Plaintiff's accident and resulting personal injuries were not caused by any unseaworthiness of the defendant's vessel.

3. Plaintiff's accident and resulting personal injuries were not caused by any negligence of the defendant shipowner.

4. Plaintiff's accident and resulting personal injuries were not caused by any negligence of the third-party defendant stevedore.

5. Plaintiff is not entitled to recover of defendant in this action.

6. Defendant is entitled to recover of third-party defendant the costs and attorney's fees incurred by defendant in the defense of this action.

## DIRECTION FOR ENTRY OF JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law, it is

Ordered, adjudged and decreed that on the claim of the plaintiff Isiah Tate against the defendant A/B Svenska Amerika Linein, judgment be entered for the defendant; and that on the third-party claim of the defendant against the third-party defendant Strachan Shipping Company, judgment be entered for defendant for the costs and attorney's fees incurred by defendant in the defense of this action in an amount to be determined by the Court if the parties are unable to agree thereon within thirty (30) days from this date.