**William O. HAUGHTON, Plaintiff Appellant-Cross-Appellee,**

v.

**BLACKSHIPS, INC., Defendant Appellee-Cross-Appellant.**

**No. 71–3001.**

United States Court of Appeals, Fifth Circuit.

June 23, 1972.

D. Yancey White, Corpus Christi, Tex., for appellant.

J. Michael Mahaffey, R. W. Woolsey, Corpus Christi, Tex., for appellee.

Before GODBOLD and MORGAN, Circuit Judges, and BUE,* District Judge.

CARL O. BUE, Jr., District Judge:

William O. Haughton, a boatswain aboard the S/S GULF PANTHER, sustained injuries when he slipped on the snow covered deck on the port side of the vessel while it was moored in the Port of Philadelphia, Pennsylvania, on February 17, 1967. He had just com-

---

* Judge Carl O. Bue, Jr., U. S. District Court, sitting by designation.

pleted loading and stowing two new coils of mooring line with two other seamen and was making his way aft through the uncleared snow when he fell. The trial court, 334 F.Supp. 317, in a non-jury case awarded $34,650 in damages, but held that Haughton was fifty percent contributorily negligent, thereby reducing the damage award to $17,325. Additionally, the plaintiff was awarded the sum of $1,000 for maintenance and cure to and including April 19, 1969.

■ Two objections to the trial court's findings may be dismissed with brief comment. Appellant objects to the trial court's ruling that the plaintiff had achieved maximum physical recovery and thus was not entitled to maintenance and cure after April 19, 1969. Inasmuch as the trial court made this determination which cannot be shown to be clearly erroneous from a review of this record, it should be affirmed under Rule 52(a), Fed.R.Civ.P. Likewise, without clear error is the court's finding to which cross-appellant objects that the GULF PANTHER was rendered unseaworthy by the presence of snow on her deck. We are reminded that "a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery," Colon v. Trinidad Corp., 188 F. Supp. 97, 100, (S.D.N.Y.1960). *See* Tate v. A/B Svenska Amerika Linein, 331 F.Supp. 854 (E.D.La.1970), aff'd per curiam, 435 F.2d 172 (5th Cir. 1970). Whether the deck became so unreasonably slippery as to render the vessel unseaworthy is a question of fact for the trial judge to resolve which ruling is not to be disturbed on appeal unless clearly erroneous.

■ Appellant also cites as error the trial court's finding that appellant's failure to submit to a spinal graft and fusion would prevent recovery of any damages which such operation would have alleviated. However, it is unnecessary to decide this point, inasmuch as the court below made no such finding. Rather, the court, by applying a reasonably prudent man standard, rejected the contention made at trial that failure to submit to surgery would prevent recovery of any damages which such surgery would have alleviated.

This Court feels that the evidence presented by the orthopedic specialist should be given more weight than that of the general practitioner; but even so, when you consider the age of plaintiff, who was about fifty-one (51) years of age at the time of injury, apparently fifty-four (54) at the time of trial, and that he is able to work at less strenuous jobs and does not hurt bad enough to have the surgery, the Court feels that a reasonably prudent man, under the circumstances in this case, would not go ahead with the surgery, and the Court so finds.

Moreover, it is clear from the Supplemental Memorandum and Order of the trial court filed on June 16, 1971, that no reduction in the amount of damages awarded in this case was made for this reason. The court noted that plaintiff preferred not to undergo surgery and, accordingly, awarded medical expenses without including a sum to compensate for the expense of surgery. This, too, is objected to by appellant, who argues that he should be awarded a sum to have surgery performed, even though he now contemplates no such operative procedure.

We find the award of the trial court to be consistent with the applicable rule of law and with the policy considerations sustaining such rule.

The award of a lump sum in anticipation of the continuing need of maintenance and cure for life or an indefinite period is without support in judicial decisions. Awards of small amounts to cover future maintenance and cure of a kind and for a period definitely ascertained or ascertainable have occasionally been made.

Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 530–531, 58 S.Ct. 651, 654, 82 L.Ed. 993 (1938).

It is further alleged that the trial court erred in failing to make specific findings for each element of damage as required by Noble v. Bank Line, Ltd., 431 F.2d 520 (5th Cir. 1970); Neill v. Diamond M Drilling Co., 426 F.2d 487 (5th Cir. 1970). This contention is without merit in the context of this case. The Supplemental Memorandum and Order entered on June 16, 1971, corrected the trial court's lump sum award previously made and sets out with sufficient particularity the amount of money awarded for each element of damage.

■ Finally, appellant urges as error that the court considered appellant's retirement benefits in mitigation of damages, thus contravening the proper application of the collateral source rule. This legal area merits some exposition.

The trial court found that the retirement benefits received by Haughton were from a fund established by virtue of a contract between Blackships and the National Maritime Union, that all of the money in the fund was contributed by the employer Blackships and that Haughton's pension was a benefit directly attributable to the employer. This collateral source income, the court said, should be considered in mitigation of damages, since it was derived from a fund directly attributable to the employer and not one to which the employee also contributed. In reaching its conclusion, the court scrutinized and distinguished Eichel v. New York Central R. R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L. Ed.2d 307 (1963); and New York, New Haven & Hartford R. R. Co. v. Leary, 204 F.2d 461, 468 (1st Cir. 1953), cert. denied, 346 U.S. 856, 74 S.Ct. 71, 98 L. Ed. 370 (1953).

■ After a review of the reported cases and related policy considerations, we reverse on this issue. In considering the applicability of the collateral source rule, the basic principle to be applied is that the employer-tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee from an independent source. However, it is also true that the source of the funds may be determined to be collateral or independent, even though the employer-tortfeasor supplies such funds, United States v. Price, 288 F.2d 448 (4th Cir. 1961). *See* also Annot., 75 A.L.R.2d 886 (1961).

Application of the collateral source rule depends less upon the source of funds than upon the character of the benefits received, Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534–535 (9th Cir. 1962).[1] The mere fact that the employer-tortfeasor has contributed money (by payment of premiums, contributions, etc.) to the fund from which the benefits derive does not establish that such fund may not be a collateral source, Hall v. Minnesota Transfer Ry. Co., 322 F.Supp. 92, 95 (D.Minn.1971), and cases cited therein.

*Hall*, a FELA case, is particularly helpful in resolving the instant appeal. In that decision the "collateral source" was a medical and hospitalization policy which, as a result of a collective bargaining agreement, was instituted to cover employees' premiums that were to be paid by the employer directly to the insurer. The district court reasoned as follows, relying on United States v. Price, 288 F.2d 448, 450 (4th Cir. 1961):

The collective bargaining contract between that employee group and the de-

---

1. Although cross-appellant places reliance upon this case in support of its position that the collateral source doctrine does not apply since appellee was the sole contributor to the fund, it is apparent that the holding in *Gypsum Carriers* is fully consistent with that in *Price*. In footnote 31 at 534 it is stated:

We do not mean to suggest that payments from a fund to an injured person would necessarily be deductible from damages whenever the tortfeasor had contributed to the fund. The result will depend upon the purpose and nature of the fund and of the payments. (Citing United States v. Price and other cases).

fendant Railroad includes, as an economic term, a requirement that the employer pay premiums directly to the insurer, much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan. This policy is, in short, a fringe benefit given in part consideration for the employee's services. It is in no sense a mere gratuity nor an arrangement by which the company has undertaken voluntarily to indemnify itself against possible liabilities to injured employees under the FELA.

. . . . . .

On the basis of the foregoing, the court concludes that where the insurance policy is one of general hospital and medical coverage upon which the insured may make claim without regard to liability on the part of the employer, such a policy is a fringe benefit maintained by the employer and is in effect part of the employee's income for services rendered, and the collateral source rule prohibits set-off of premiums paid or benefits received thereunder by the employee.

*Id.* 322 F.Supp. at 96, 97.

As in United States v. Price, the court in *Hall* placed far more importance upon the character of the benefits received and what such benefits were designed to do than upon whether they were paid, either directly or indirectly, by the employer. *See also* Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534–535 (9th Cir. 1962). It is instructive to compare *Hall* with Thomas v. Humble Oil & Refining Co., 420 F.2d 793 (4th Cir. 1970) wherein the disability plan provided for in the collective bargaining agreement supplemented and embroidered the normal maintenance and cure payments and in no way pretended "to provide for the payment of wages," 420 F.2d at 794. Contrary to a plan containing fringe benefits given solely in return for the employee's services for which set-off would be improper, the benefit at issue in *Thomas* is best characterized as a vol-untary undertaking by the employer to indemnify itself against its possible legal liabilities for payment of maintenance and cure. In this latter situation, set-off was properly allowed.

The facts in United States v. Price, cited *supra,* serve to underscore this distinction. A government worker injured at a shipyard brought a Federal Tort Claims Act suit against the government. A set-off against the damage award was claimed by the government for all funds received through the plaintiff's Civil Service Retirement and Disability annuity. The court refused to permit the set-off, noting that the annuity was established by the government with a different purpose in mind than for the compensation of injuries. *See also* Jennings v. United States, 291 F.2d 880, 887–888 (4th Cir. 1961); United States v. Gallops, 207 F.2d 48, 50 (5th Cir. 1963).

The policy considerations for the collateral source rule are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor.

Accordingly, the trial court's deduction of the maritime pension to the extent of $3,500 in mitigation of damages awarded to appellant was improper. The case is therefore reversed and remanded for modification of the decree entered so as to be consistent with this opinion.

Reversed and remanded.