Robert C. FOSTER and Ann I. Foster,
his wife, Appellees,

v.

MARITRANS, INC., Maritrans Gp, Inc.
and Maritrans Operating Partners,
L.P., Appellants.

Superior Court of Pennsylvania.

Argued June 26, 2001.
Filed Jan. 9, 2002.

**330**

Stuart M. Goldstein, Philadelphia, for appellants.

Louis Perez, Philadelphia, for appellees.

Before: HUDOCK, STEVENS, and POPOVICH, JJ.

STEVENS, J.:

¶ 1 Maritrans Operating Partners, L.P. (Maritrans) appeals from a December 11, 2000 judgment in favor of Robert and Ann Foster.

¶ 2 The record before us reveals that Robert Foster was employed as a merchant seaman on February 29, 1996, when he slipped and fell on the icy deck of a tugboat owned and operated by Maritrans. On February 6, 1998, Foster and his wife filed a civil action against Maritrans, alleging that Maritrans was negligent under the Jones Act, 46 U.S.C.App. § 688 *et seq.*,[1] and that the tugboat was unseaworthy under general maritime law.

¶ 3 On May 2, 2000, a jury found that although Maritrans was not negligent, the tugboat was unseaworthy, and that such a condition caused Foster's fall and resulting injury, for which he was entitled to one million eight hundred thousand dollars ($1,800,000.00) in damages. The parties agreed to bifurcate the issue of maintenance and cure, therefore the jury did not address that issue. Maritrans filed post-trial motions on May 11, 2000, which were denied by the trial court on September 18, 2000. The following day, judgment was entered on the verdict, but on September 26, 2000, judgment was vacated pending final decision of the court on outstanding claims. On November 28, 2000, the trial court issued a memorandum and order addressing the issue of maintenance and cure, awarding Foster $33,630.34.[2] Thereafter, on December 11, 2000, judgment was entered on the May 2, 2000 jury verdict and the November 28, 2000 order of the trial court.

¶ 4 Maritrans filed the instant appeal on January 9, 2001, raising four allegations of error. It first argues that the trial court erred in failing to enter judgment notwithstanding the verdict where the evidence showed only that Foster slipped on naturally occurring ice on the deck of a vessel in transit, which does not represent an unseaworthy condition as a matter of law.

Our scope of review with respect to whether JNOV is appropriate is plenary, as with any review of questions of law. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (Pa.1995). It is axiomatic that, "there are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two,

---

1. The courts of this Commonwealth have concurrent jurisdiction with federal courts to try actions brought under the Jones Act for injuries sustained, and for maintenance and cure under traditional maritime law. *Richards v. Dravo Corp.*, 249 Pa.Super. 47, 375 A.2d 750, 752 (1977). "[T]he Jones Act extends the rights of seamen to sue for injuries resulting from the shipowner's negligence. The Act provides that rules of liability established under the Federal Employers' Liability Act will apply in such an action." *Id.* at 752 n. 1.

2. This ruling is not a subject of the instant appeal. Appellant's brief at 5, n. 1.

the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1007 (Pa.1992) (citations omitted). To uphold JNOV on the first basis, we must review the record and conclude "that even with all the factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second [we] review the evidentiary record and [conclude] that the evidence was such that a verdict for the movant was beyond peradventure." *Id.*

When we review a motion for JNOV, we must consider the evidence in the light most favorable to the verdict winner, who must receive "the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Id.* (citing *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741, 745 (Pa. 1977)). Any doubts must be resolved in favor of the verdict winner, and JNOV should only be entered in a clear case. *Id.* Finally, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Id.* (citing *Brown v. Shirks Motor Express*, 393 Pa. 367, 143 A.2d 374, 379 (Pa.1958)).

*Rohm & Haas Co. v. Continental Cas. Co.*, 781 A.2d 1172, 1176 (Pa.2001). Reviewing the evidence before us under the above standard, we find that Maritrans is entitled to judgment notwithstanding the verdict.

¶ 5 Foster testified that there was no ice on the deck in the hours before his fall, but that some water can get on deck, and freeze, as a result of spray when a vessel is underway, and that on the day in question "somehow water got on the deck" before his fall. N.T. 4/24/00 at 138–140. In addition, Foster's expert witness testified that it is typical for a vessel underway to have its deck awash. 3/1/00 Deposition of William Skye, at 64. Maritrans argues that this evidence shows only that Foster slipped on naturally occurring ice on the deck of a vehicle in transit and that such evidence is insufficient to establish that the vessel was unseaworthy under maritime law.[3]

¶ 6 The doctrine of unseaworthiness involves liability without fault. *Newman v. Consolidation Coal Co.*, 438 Pa.Super. 703, 652 A.2d 415 (1994). "Under federal law, a ship owner is strictly liable for failing to furnish a seaworthy ship. Liability for failing to provide a seaworthy ship arises independent of any duty to exercise reasonable care." *Klineburger*, 591 A.2d at 315–316 (citations omitted). "A ship owner has an absolute duty to furnish a seaworthy ship." *Pappas v. Potomac Party Cruises, Inc.*, 2000 WL 724054, at *4, 2000 U.S.App. Lexis 12443, at *12–13 (4th Cir. June 6, 2000) (*citing Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)).

¶ 7 To establish a claim for unseaworthiness, Foster must establish: "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for

---

**3.** Although the present action has been brought in a state court, liability must be determined according to federal, maritime law. *Klineburger v. Maritrans*, 404 Pa.Super. 490, 591 A.2d 314, 315 (1991) *app. den.*, 529 Pa. 635, 600 A.2d 954 (1991), *cert. den.*, 503 U.S. 1005, 112 S.Ct. 1762, 118 L.Ed.2d 425 (1992) (citations omitted).

its intended use; and (4) the unseaworthy condition proximately caused his injuries." *Ribitzki v. Canmar Reading & Bates,* 111 F.3d 658, 664 (9th Cir.1997). *See also Bunting v. Sun Co.,* 434 Pa.Super. 404, 643 A.2d 1085, 1086 (1994) ("In order to prove a claim of unseaworthiness under federal maritime law, a plaintiff must show that the unseaworthy condition of the vessel was the proximate, or direct, and substantial cause of his or her injuries.").

[E]xamination of a great many personal injury cases in which claims of unseaworthiness were presented leads to the conclusion that those cases are of two categories, both of which fit this general definition. One is where the shipowner, having knowledge—actual or constructive—that certain activity will occur, is imposed with an absolute duty of supplying equipment for permitting the conduct and accomplishment in reasonable safety of that activity .... The other category is where the equipment actually supplied by the owner for doing the ship's work proves incapable of performing its function in the manner for which it was designed.

*Canty v. Sun Transport, Inc.,* 422 Pa.Super. 607, 620 A.2d 1, 3 (1992) (citation omitted). "The condition of unseaworthiness may arise from the 'existence of a defective condition, however temporary, on a physical part of the ship.' *Ribitzki,* 111 F.3d at 664." *Pappas,* 2000 WL 724054, at *4, 2000 U.S.App. Lexis 12443, at *13. *See also Reyes v. Delta Dallas Alpha Corp.,* 199 F.3d 626, 630 (2nd Cir.1999) ("[U]nseaworthiness may be found as to a transitory condition.").

¶ 8 What is currently in dispute is whether the deck on which Foster slipped was reasonably fit for its intended use, as he essentially alleges that the ice which formed on the deck rendered it incapable of functioning in the manner in which it

was designed. Maritrans does not dispute that there was ice on the tug's deck, but, rather, argues that ice is a condition which commonly occurs on the decks of vehicles underway in freezing weather, and that the presence of such ice does not automatically render a vessel unseaworthy.

 ¶ 9 We agree. A ship does not have to be "accident-free," but must only be reasonably fit for its intended use. *Pappas,* 2000 WL 724054, at *4, 2000 U.S.App. Lexis 12443, at *12 (*citing Mitchell, supra* ).

Applying the foregoing doctrine, the courts have consistently held that the mere presence of rain water, snow or sleet upon the deck or other exposed areas of a vessel does not render the vessel unseaworthy or create a condition requiring the owner to take corrective measures. Such conditions are reasonably expectable and unavoidable incidents of shipboard life, and unless the working surfaces of a vessel are found to be unreasonably slippery, the shipowner is not liable for breach of his warranty of seaworthiness.

. . .

A seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery. It seems only fair that men who make their livelihood on the water can be expected to cope with some of the hazardous conditions that must prevail even on a seaworthy vessel.

*Tate v. A/B Svenska Amerika Linein,* 331 F.Supp. 854, 857–858 (E.D.La.1970) (*citing Colon v. Trinidad Corporation,* 188 F.Supp. 97 (S.D.N.Y.1960)). In *Tate,* a longshoreman slipped on a wet deck surface and contended that the slippery condition rendered the vessel unseaworthy. *Id.* at 856. The United States District Court refused to find the vessel unseaworthy on the ground that the longshoreman had

failed to prove that the presence of rainwater on the deck was not an "unavoidable normally and reasonably expectable condition, or that it rendered the deck so unreasonably slippery that the vessel was not reasonably fit for use." *Id.* at 858.

¶ 10 Similarly, in *Connorton v. Harbor Towing Corporation,* 237 F.Supp. 63 (D.Md.1964), *affirmed* 352 F.2d 517 (4th Cir.Md.1965), a seaman alleged that ice on the deck of his vessel rendered it unseaworthy. The court found that:

> As a practical matter, it would be impossible to maintain an ice free deck while operating at sea in freezing weather where the slightest ocean spray can create sheets of ice on deck.... Given the freezing weather and the inevitability of ocean spray, [the vessel's decks] were reasonably fit for the purpose for which they were to be used.

*Id.* at 65 (citations omitted).

¶ 11 With the guidance of the above-cited cases, and reviewing the evidence in a light most favorable to Foster, as verdict winner, we find that he failed to prove that the presence of ice on the tug's deck rendered it unseaworthy. Therefore, it was error for the trial court to refuse to grant judgment notwithstanding the verdict on

this issue. *Rohm & Haas Co., supra.* In light of this decision, it is not necessary for us to address Maritran's remaining appellate arguments.[4]

¶ 12 Accordingly, we reverse that portion of the December 11, 2000 entry of judgment in favor of Foster pertaining to the damages awarded by the May 2, 2000 jury verdict, and remand with directions to enter judgment notwithstanding the verdict in favor of Maritrans. As we previously noted, Maritrans does not dispute the entry of judgment in favor of Foster pertaining to the trial court's November 28, 2000 order awarding maintenance and cure. Therefore, we affirm the portion of the December 11, 2000 entry of judgment as it pertains to the November 28, 2000 order.

¶ 13 Reversed in part, and remanded. Affirmed in part. Jurisdiction relinquished.

---

4. Maritrans also asserted on appeal that: The trial court erred in failing to enter judgment notwithstanding the verdict where the evidence failed to disclose that Foster slipped on contemporaneously formed ice, which condition absolves Maritrans from liability as a matter of law under the hills and ridges doctrine; the trial court erred in failing to grant a new trial on the issue of unseaworthiness on the ground that the trial court failed to properly charge the jury on the effect of the presence of naturally occurring ice on the deck of a vehicle in transit and the unavoidable exposure of a vessel to weather, as those conditions pertain to the doctrine of unseaworthiness; and the trial court erred in failing to grant a new trial on the ground that the trial court failed to properly charge the jury on the causation standard applicable to Foster, as a seaman, for contributory negligence.