Curtis Lee THOMAS, Appellant,

v.

HUMBLE OIL & REFINING COM-
PANY, Appellee.

No. 13340.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 5, 1969.

Decided Jan. 30, 1970.

Ralph Rabinowitz, Norfolk, Va., for
appellant.

Guilford D. Ware, Norfolk, Va.
(Francis N. Crenshaw, and Crenshaw,
Ware & Johnson, Norfolk, Va., on
brief), for appellee.

Before BRYAN, WINTER and BUTZ-
NER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

For general maritime maintenance
seaman Curtis Lee Thomas sued his

ship's owner, Humble Oil & Refining Company. The District Court, 292 F. Supp. 260 (EDVa.1968), dismissed the libel on the finding that he had, in effect, been paid in full. We agree.

■ There was no question of Thomas' entitlement to maintenance. Ever since the ancient laws of Rhodes, Oleron and Wisby, it seems for every day a seaman is disabled and not on the ship or in the hospital, and until he has gained maximum medical cure, his right to maintenance has been an obligation of the owner and the ship. Aguilar v. Standard Oil Co., 318 U.S. 724, 727, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

Thomas had shipped for coastwise and nearby foreign service on Humble's vessels since 1950 until his retirement in 1967. His right wrist was injured in 1957 in a fall while swabbing deck on a tanker of the defendant. In 1963 aboard the SS Esso Washington, the pain and swelling returned in the wrist, and when the voyage terminated in Boston about December 23, 1963, Thomas left the ship to obtain medical attention.

Instead of the United States Public Health facilities at Boston, he reported at the Marine Hospital in Norfolk, Virginia. Listed there on December 25, 1963 as an out-patient, unfit for duty, he continued so rated until March 10, 1964. The next day he was admitted to the hospital as an in-patient receiving treatment until March 31, 1964, when he resumed out-patient status until declared ready for duty August 13, 1964.

Thereupon he signed on Humble's SS Esso Baltimore as an oiler, serving throughout the journey to her ad port, New York, on September 30, 1964. On October 1, 1964 Thomas again became and remained an out-patient until he qualified for duty October 8, 1964.

Thomas' suit here is for each of the days he was an out-patient. The maintenance daily rate, agreed, was $8.00. Indisputably, at least an equivalent sum, and usually more, was paid him for all of these days. However, Thomas contends that this remuneration does not qualify as maintenance.

No union, but rather a voluntary organization designated as the Esso Seamen's Association, was certified by the National Labor Relations Board in Humble's operation as the representative of unlicensed personnel, such as Thomas. A collective bargaining agreement was in force between the Association and the company. It recognized Humble's private disability plan for which no contribution was exacted from the employees. The crews' articles embraced its terms and were signed by Thomas each time he sailed on a Humble vessel.

The bargaining agreement stipulates, among other things, that:

"Maintenance shall not be paid concurrently with payments under the Disability Benefit Plan, if applicable, unless the maintenance due is in excess of plan payments, in which event the $8.00 rate as herein provided will apply. In such a case a differential will be paid which, when added to plan payments, will bring total payments to the level of full maintenance due."

■ This agreement together with the plan it incorporates does not pretend to provide for the payment of wages. It simply supplements and embroiders maintenance. Besides assuring satisfaction of maintenance, the plan gives the qualifying seaman for a period of 26 weeks, after leaving the vessel, the equivalent of his full pay plus $1.20 per day for each day that he does not receive board and lodging. These payments are halved for the following 26 weeks. After these fifty-two weeks the agreement goes beyond the plan and awards the seaman $8.00 per day until he reaches maximum cure. *Never can the installments fall below the maintenance allowance.*

■ True, every employee ashore participates in the disability plan. Nevertheless, the privilege of others did not pinch Thomas' enjoyment of mainte-

nance. Nor did the circumstance that once he was paid nothing for a month and was told that he must "come down and sign a paper [before he] could get any money". This occurrence does not prove the plan a deprivation of maintenance.

It is objected, further, that Humble under the plan deducted for a biweekly period a thrift contribution of $27.44, a thrift fund loan of $30.14, $6.65 towards an annuity contract. It is not suggested that these items were permitted to diminish or in any degree encroach upon maintenance. Thomas' brief complains that the company can suspend benefits for employee fault, change of address, failure to release the employer, or employee failure to do anything the employer requires. However, it points to no instance when these reservations were enforced or were applied to curtail maintenance.

Thomas acknowledges he has received all benefits payable to him under the plan and agreement. But he wants this and maintenance too. As previously noted, the plan and agreement do not provide for wages. They assure maintenance and possible extras. These have been furnished, and so Thomas is not due additional moneys.

Finally, we have also considered the complaint that Thomas did not understand the operation of the agreement when taking ship in his several passages, and did not realize that the receipts he gave also constituted releases of all liability to him. However, we find with the District Court that all aspects of his employment were intelligibly explained and fully comprehended by him.

In sum, the collective bargaining agreement between Humble and the Seamen's Association, which includes plan benefits, does not, as accused, evade the intent of the statute, 45 U.S.C. § 55, as adopted by 46 U.S.C. § 688, which denounces devices to exempt the employer from any liability to seamen. Rather, through this agreement, the company has provided and preserved the in-grained maintenance of the general maritime law. We conclude that in this regard Humble has punctiliously kept the laws of the sea.

Affirmed.