James **HALL**, Plaintiff,

v.

The **MINNESOTA TRANSFER RAILWAY COMPANY**, a corporation, Defendant.

No. 40–70 Civ. 24.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 1, 1971.

Yaeger & Yaeger, by John B. Mc-Carthy, Minneapolis, Minn., for plaintiff.

Newcome, Wallace & Newcome, by Thomas W. Newcome, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

Defendant's post-trial motion to reduce plaintiff's $12,000 verdict in this Federal Employers' Liability Act case by an offset in the amount of $1,701.20 raises a question on which neither counsel have cited, nor has the court been able to find, any controlling authority. It involves the application of what has been called the "collateral source" rule. Defendant paid the $1,701.20, subject to reimbursement by an insurer, toward plaintiff's hospital and medical bills, the amount of which bills were received in evidence at the trial for the jury's consideration in assessing damages.

By affidavits filed by counsel it appears that defendant and plaintiff and other employees are named as insureds in an insurance policy of the Travellers' Insurance Company, Group Policy GA 23000. Maintenance of this policy, 100% of the premiums of which are paid by the defendant, is required by a contract between defendant and the employees' collective bargaining representa-

tive. The policy is written to cover hospital and medical expenses of certain employees and their dependents. Coverage is not limited to amounts for which the defendant would be liable under the Federal Employers' Liability Act, but extends to all bills for health care incurred by or for the beneficiaries. By the terms of the contract between the insurer and the employer and employee groups, the employer may elect to serve as a conduit between the insurer and the beneficiary by paying any expenses which are covered by the policy and receiving the proceeds of the policy by way of reimbursement directly from the insurer.[1] Such was done in this case in that certain hospital and medical bills incurred by plaintiff in connection with the injuries which are the subject matter of this action were paid by defendant to the extent of $1,701.20 subject to reimbursement by the insurer from the proceeds of this policy.[2]

The starting point for a resolution of this question must be Section 5 of the Federal Employers' Liability Act (hereinafter "FELA"), 45 U.S.C. § 55, which reads:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.*" [Emphasis added]

Section 5 is incorporated in the Jones Act by 46 U.S.C. § 688 and controls set-offs to the same extent in cases arising under that Act.[3]

■■ Congress passed the FELA, "An Act relating to the liability of common carriers by railroad to their employees in certain cases", in 1906, to protect railroad employees by eliminating certain common law defenses such as the so-called "fellow servant rule" and the rule that contributory negligence is an absolute bar to recovery by an injured employee. The Act was not iₙ tended to supersede or pre-empt the common law in railroad employee injury cases, but merely to modify it in these specific particulars. Thus, the Act contains no provisions regulating the measure of damages recoverable in an action to which the FELA applies, and courts have since held that the absence in the Act of specific provisions governing the measure of damages in FELA actions does not affect their availability as before the Act. See Kozar v. Chesapeake & Ohio Ry., 320 F.Supp. 335, at 346–357 (W.D.Mich.1970), Fox, District, J., and the authorities cited therein.

■■ The collateral source rule provides that a tortfeasor cannot reduce the

---

1. The Policy Contract, as amended effective March 1, 1968, reads at Article VII, under "Benefits", at page 36, as follows: "All benefits provided under this Article are payable to or on behalf of the Employee, provided that benefits based on expenses paid by the Employer or other person or organization (or which an Employer shall be obligated to pay) may be paid by the Insurer to such Employer or other person or organization."

2. Defendant actually paid approximately $1,900.00 for plaintiff's bills, about $200.00 of which is admitted by plaintiff not to have come from the proceeds of this policy but rather from defendant's own pocket, and is thus considered by both parties as appropriately set off.

3. On the general meaning of Section 5 and an account of its legislative history, see Philadelphia, Baltimore & Washington R. Co. v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912); Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575 (1942); Richter & Forer, "Federal Employers' Liability Act", 12 F.R.D. 13, 52–57 (1951).

amount of his liability upon a judgment for an injured plaintiff by reason of compensation or insurance proceeds paid to the plaintiff from a collateral source independent of the tortfeasor. No court has considered at length the intended effect of Section 5 of the FELA upon the applicability of this common law rule.[4] The Eighth Circuit has interpreted Section 5 to permit its application:

> "*Without the aid of the statute* an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund."
> [Emphasis added]

Chicago Great Western Ry. v. Peeler, 140 F.2d 865 at 868 (8th Cir. 1944). Thus, the Congress which passed Section 5 apparently contemplated that the common law collateral source rule would apply in FELA cases as before that Section's enactment, subject to the directive of Section 5's proviso that "any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought" may be set-off regardless of its status under the common law rule.

■ The proviso to Section 5 was apparently intended simply to clarify the right of employers to indemnify themselves against potential liabilities under the FELA notwithstanding the clause forbidding contracts or devices by which an employer might attempt to "exempt itself from any liability" imposed by the Act. Seaboldt v. Pennsylvania R. R.,

290 F.2d 296 (3d Cir. 1961); Chicago & N. W. Ry. v. Davenport, 205 F.2d 589 (5th Cir. 1953); Gaulden v. Southern Pacific Co., 78 F.Supp. 651 (N.D.Cal. 1948), aff'd per curiam without opinion, 174 F.2d 1022 (9th Cir. 1949); Culmer v. Baltimore & Ohio R. Co., 1 F.R.D. 765 (W.D.Pa.1941). The concern of the Section is that an employee be compensated to the full extent of his loss, not that an employer be precluded from indemnifying himself against potential FELA liability as, for instance, by carrying liability insurance coverage.

■ Issues relating to the measurement of damages in FELA actions, including specifically the question whether the collateral source rule and/or 45 U.S.C. § 55 bar set-off of the monies here at issue, are governed by the federal common law. Sleeman v. Chesapeake & Ohio Ry., 414 F.2d 305, 307 (6th Cir. 1969); Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 535 (9th Cir. 1962), a Jones Act case. See also Sinovich v. Erie R. R., 230 F.2d 658 (3d Cir. 1956); New York, New Haven & Hartford R. Co. v. Leary, 204 F.2d 461 (1st Cir. 1953), cert. denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1953); Chicago Great Western Ry. v. Peeler, *supra.*

■ Application of the collateral source rule depends upon the character of the benefits received. Gypsum Carrier, Inc. v. Handelsman, *supra.*

The mere fact that the employer tortfeasor has contributed money (in this case by payment of premiums) to the fund from which the benefits derive does not establish that such fund may not be a collateral source. Gypsum Carrier, Inc. v. Handelsman, *supra*; United States v. Price, 288 F.2d 448, 450 (4th Cir. 1961); Chicago Great Western Ry.

4. One commentator has observed: "Section 5 of the FELA, which enumerates certain items which an employer can set off in an employee's suit under that act, might be read to reflect a congressional decision that no additional collateral benefits can be set off. Judicial practice, however, has been to determine whether a particular benefit falls within section 5; if not, the 'collateral source rule' is invoked and mitigation denied—without discussion of the policy considerations behind this particular application of the rule." Note, "Unreason in the Law of Damages: the Collateral Source Rule", 77 Harv.L.Rev. 741, 752–53 (1964).

v. Peeler, *supra*; the Railroad Retirement Act cases;[5] 25 C.J.S. Damages § 99, p. 1013.

■ In this case, plaintiff in effect received the proceeds of an insurance policy covering medical and hospital expenses of his family. Essentially, the insurance contract was between the insurer and the employee policyholders group. The collective bargaining contract between that employee group and the defendant Railroad includes, as an economic term, a requirement that the employer pay premiums directly to the insurer, much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan.[6] This policy is, in short, a fringe benefit given in part consideration for the employee's services. It is in no sense a mere gratuity nor an arrangement by which the company has undertaken voluntarily to indemnify itself against possible liabilities to injured employees under the FELA.

This characterization of the benefits comports with the view of the Fourth Circuit in the case of United States v. Price, *supra*. Price dealt with the question whether, in a Federal Tort Claims Act case, the government could set off amounts received by the injured plaintiff under an annuity plan to which the government had contributed pursuant to the Civil Service Retirement Act, 5 U.S. C. § 2251 et seq. The court refused to allow set-off because it characterized the benefits as emanating from a collateral source. At 288 F.2d page 451, footnote 6, the court recognized the argument that:

> "The retirement plan is considered an emolument, one of the fringe benefits of the job, and that one of its purposes is to retain qualified employees in government service. Under this view, it could be argued that the employees actually contribute more than 6½% of their salaries, for what the Government contributes to the fund might be deemed further consideration for the services of persons in government employment."

See also, Jennings v. United States, 291 F.2d 880, 887–888 (4th Cir. 1961). United States v. Gallops, 207 F.2d 48, 50 (5th Cir. 1953). *Cf.* Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 316–317 (2d Cir. 1964); Klein v. United States, 339 F.2d 512, 518 (2d Cir. 1964).

■ A limited employer indemnity insurance policy may be distinguished from that in the case at bar. Where the insurance is written to cover only those injuries incurred on the job for which the employer might be liable by statute or common law, it is solely for the bene-

5. While cases considering the applicability of Section 5 and the collateral source rule in FELA actions are rather scarce, there is considerable authority for the proposition that the employer cannot set off amounts it has contributed to the Railroad Retirement Fund under 26 U.S. C. § 3221 et seq., nor benefits received or to be received (as discounted to a present value) by the injured employee from such fund. Eichel v. New York Central R. R., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); McCarthy v. Palmer, 113 F.2d 721 (2d Cir. 1940), cert. denied 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438 (1940); New York, New Haven & Hartford R. Co. v. Leary, *supra*; Chicago Great Western R. Co. v. Peeler, *supra*; Hetrick v. Reading Co., 39 F.Supp. 22 (D.N.J.1941); Hughes v. Clinchfield R. R., 289 F.Supp. 374 (E.D.Tenn.1968). Although these cases cast some light on the intent of Section 5's proviso, they are distinguishable from the instant case in at least three significant particulars: (1) they involved an analysis of 45 U.S.C. § 58, which expressly reserves the rights of all FELA-protected employees under other Acts of Congress, (2) they involved an investigation of the legislative intent of the Railroad Retirement Act itself, and (3) Railroad Retirement Fund benefits are paid on account of the employee's reaching retirement age, not necessarily "on account of injury or death."

6. The parties have not supplied the court with information regarding the tax treatment, from the employees' point of view, of sums contributed by the employer in the form of premium payments.

fit of the employer and cannot be characterized as a fringe benefit given employees in partial consideration for their labors. See, e. g., Thomas v. Humble Oil & Refining Co., 420 F.2d 793 (4th Cir. 1970), a Jones Act case in which the defendant employer was permitted to set-off amounts paid to the plaintiff seaman pursuant to an indemnity plan designed to cover employee injuries only to the extent of the employer's liability for "maintenance and cure" under the Jones Act and general maritime law. Because it provided employees with "insurance" against only those injuries for which the employer would be liable at law, it could not be characterized as a consideration given for their services. In Wagner v. Reading Co., 428 F.2d 289 (3d Cir. 1970), a FELA case, the court permitted the defendant to set off amounts previously furnished plaintiff by defendant subject to reimbursement by the defendant's insurer:

> "Plaintiff contends that the trial judge erred in permitting defendant to show that the defendant had paid the plaintiff's medical bills which were introduced in evidence, especially since defendant was reimbursed for such expenses by an insurance carrier. Whereas the 'collateral source rule' permits a plaintiff to recover such expenses although he has been reimbursed by his own insurance carrier or where a showing has been made that the defendant itself has paid the bills, intending a gift to the plaintiff, we have found no authority for the proposition that payment by the defendant's insurance carrier qualifies as a 'collateral source' within this rule and permits plaintiff to recover for damages already paid for by the de-

fendant. Cf. Feeley v. United States, 337 F.2d 924 (3rd Cir. 1964)."

428 F.2d at 292, footnote 7. The court's decision does not indicate whether the insurance policy was similar to that involved here or whether, on the other hand, it was limited solely to indemnity of the carrier for FELA-created liabilities for employees' injuries. See also Chamberlain v. Shaver Transportation Co., 263 F.Supp. 47, 53 (D.Ore.1967).[7]

On the basis of the foregoing, the court concludes that where the insurance policy is one of general hospital and medical coverage upon which the insured may make claim without regard to liability on the part of the employer, such a policy is a fringe benefit maintained by the employer and is in effect part of the employee's income for services rendered, and the collateral source rule prohibits set-off of premiums paid or benefits received thereunder by the employee. In this court's opinion Section 5's express set-off proviso was not intended and does not permit set-off of amounts "paid" or "contributed" by the employer to a policy of such general coverage pursuant to a collective bargaining contract. Therefore, set-off of the $1,701.20 paid by defendant subject to reimbursement by plaintiff's insurer must be denied. It stands admitted that defendant has paid plaintiff or expended for his benefit *in toto* $1,900.00 of which under the principles spelled out in the above opinion only $1,701.20 qualifies or is excludable under the collateral source rule. Defendant is thus entitled to a set-off or credit of $197.80 against the verdict and the court's separate order herein modifies the $12,000 verdict and judgment accordingly.

---

7. It is clear that such indemnity agreements, with insurers or third-parties such as shippers, do not violate Section 5's prohibition of devices designed to exempt the carrier from liability under the FELA. See Chicago & N. W. Ry. Co. v. Davenport, *supra*; Culmer v. Baltimore & Ohio Ry. Co., 1 F.R.D. 765 (W.D.Pa.1941).