**Edward W. BLAKE, Plaintiff-Appellee,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY, Defendant-Appellant.**

**No. 658, Docket 72-2220.**

United States Court of Appeals, Second Circuit.

Argued March 29, 1973.

Decided July 5, 1973.

Rehearing Denied Oct. 23, 1973.

Homer E. Peters, Albany, N.Y. (McClung, Peters & Simon, Albany, N.Y., on the brief), for plaintiff-appellee.

Augustus C. Nimphius, Albany, N.Y. (John H. English, Albany, N.Y., on the brief), for defendant-appellant.

Before FRIENDLY and LUMBARD, Circuit Judges, and THOMSEN,* District Judge.

THOMSEN, District Judge:

Defendant's appeal from a $25,000 judgment against it in an FELA case

* Of the District of Maryland, sitting by designation.

raises three questions with respect to damages.

1. Defendant argues that the jury should not have been permitted to consider as an element of damages $1,477.86 paid by defendant on account of plaintiff's medical expenses, but repaid to defendant by Travelers Insurance Company under Group Policy GA 23,000. That policy, issued and maintained pursuant to an agreement between many railroads including defendant, and the collective bargaining representatives of their employees, covers hospital and medical expenses of the insured employees, including plaintiff, and of their dependents.

Premiums on the policy are paid by the several railroads, but coverage is not limited to injuries for which the railroad would be liable under FELA; it extends to all charges for health care incurred by or for an insured employee. Article VII of the policy contains the following provision:

"All benefits provided under this Article are payable to or on behalf of the Employee, provided that benefits based on expenses paid by an Employer or other person or organization (or which an Employer shall be obligated to pay) may be paid by the Insurer to such Employer or other person or organization."

In this case defendant railroad was not obligated to pay plaintiff's hospital and medical bills; it voluntarily elected to pay $1,592.08 thereof, but received $1,477.86 by way of reimbursement from the insurer under the group policy. It now claims, as it did in the district court, that the collateral source rule was not applicable to permit plaintiff to include the $1,477.86 in his claim for damages.

Issues relating to the measure of damages in FELA actions are governed by federal law, as are cases under the Jones Act, which adopted certain sections of FELA, including § 5, 45 U.S.C. § 55, which reads:

"§ 55. *Contract, rule, regulation, or device exempting from liability; set-off*

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

In Bangor & Aroostook R. Co. v. Jones, 36 F.2d 886 (1 Cir. 1929), defendant asked that the jury be directed to deduct $2,000 of insurance from any damages that the plaintiff might be found to be entitled to recover, citing § 5 of the FELA. The court said:

"There is no evidence in the case that the defendant contributed money toward the procurement of the insurance. If it had contributed money, it could have shown the fact and had the sum deducted, but it was not entitled to have the amount of the insurance deducted. * * *" 36 F.2d at 891.

In the case at bar, defendant did not prove the portion of the premium it paid which was applicable to plaintiff, and does not seek a credit based on any premium paid.

A number of more recent decisions have considered whether the collateral source rule should be applied in FELA and Jones Act cases, and in other cases governed by federal law. See, e. g., Eichel v. New York Central R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); Hartnett v. Reiss Steamship Co., 421 F.2d 1011, 1016, n. 3 (2 Cir. 1970); Haughton v. Blackships, Inc., 462 F.2d 788 (5 Cir. 1972); Gypsum

Carrier, Inc. v. Handelsman, 307 F.2d 525 (9 Cir. 1962); Hall v. Minnesota Transfer Railway Co., 322 F.Supp. 92 (D.Minn.1971). Other federal decisions have discussed the rule in cases governed by state law, including actions under the Federal Tort Claims Act and maritime death cases. Klein v. United States, 339 F.2d 512 (2 Cir. 1964); Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308 (2 Cir. 1964); United States v. Price, 288 F.2d 448 (4 Cir. 1961). Both groups of cases generally apply the rule to deny credit for payments made by a defendant in circumstances analogous to those in the case at bar. Cf. Thomas v. Humble Oil & Refining Co., 420 F.2d 793 (4 Cir. 1970). See also Restatement of the Law Second —Torts—Tentative Draft No. 19, March 30, 1973, § 920A and Comment, p. 167 et seq.

In the recent case of Haughton v. Blackships, Inc., *supra,* the court said (462 F.2d at 790):

"* * * In considering the applicability of the collateral source rule, the basic principle to be applied is that the employer-tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee from an independent source. However, it is also true that the source of the funds may be determined to be collateral or independent, even though the employer-tortfeasor supplies such funds, United States v. Price, 288 F.2d 448 (4th Cir. 1961). *See* also Annot., 75 A.L.R.2d 886 (1961).

"Application of the collateral source rule depends less upon the source of funds than upon the character of the benefits received, Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534–535 (9th Cir. 1962). The mere fact that the employer-tortfeasor has contributed money (by payment of premiums, contributions, etc.) to the fund from which the benefits derive does not establish that such fund may not be a collateral source, Hall v. Minnesota Transfer Ry. Co., 322 F.Supp.

92, 95 (D.Minn.1971), and cases cited therein."

*Hall* was an FELA case, in which the collateral source was the same group policy GA 23,000 involved in the instant case. Relying on United States v. Price, *supra,* Judge Neville reasoned as follows, in two passages quoted in *Haughton:*

"* * * The collective bargaining contract between that employee group and the defendant Railroad includes, as an economic term, a requirement that the employer pay premiums directly to the insurer, much as an employer might at the direction of his employee deduct money from wages and forward them directly to that employee's creditor or bank savings plan. This policy is, in short, a fringe benefit given in part consideration for the employee's services. It is in no sense a mere gratuity nor an arrangement by which the company has undertaken voluntarily to indemnify itself against possible liabilities to injured employees under the FELA.

"* * *

"On the basis of the foregoing, the court concludes that where the insurance policy is one of general hospital and medical coverage upon which the insured may make claim without regard to liability on the part of the employer, such a policy is a fringe benefit maintained by the employer and is in effect part of the employee's income for services rendered, and the collateral source rule prohibits set-off of premiums paid or benefits received thereunder by the employee. * * *" 322 F.Supp. at 96, 97, quoted in 462 F.2d at 790, 791.

In *Haughton* the Fifth Circuit added:

"The policy considerations for the collateral source are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of

damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor." 462 F.2d at 791.

In both cases, *Hall* and *Haughton*, the railroad was denied the claimed credit. Those decisions are in accord with the opinions of this Court cited above.

The district judge properly allowed the jury to consider the $1,477.86 item.

2. Defendant objects because an attending physician was allowed to use his notes and records during the course of his testimony, without laying a proper foundation therefor, and claims that his cross-examination was thwarted thereby. We find no reversible error in any of the rulings.

3. Defendant's final objection is that the district judge refused to charge the jury that any award to the plaintiff would be free of income tax. The judge was not required to give such a charge in this case. McWeeney v. New York, N.H. & Hart. R. Co., 282 F. 2d 34, 35–39 (2 Cir. 1960), cert. den., 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960); Petition of Marina Mercante Nicaraguense, S. A., 364 F.2d 118 (2 Cir. 1966).[1]

The judgment appealed from is

Affirmed.

HENRY J. FRIENDLY, Circuit Judge (concurring):

Permitting Blake to recover from the railroad the bulk of his hospital bills, which were paid by the railroad and not by him, seems to me shockingly unjust. The collateral source rule, which has come under increasing criticism, see Restatement of Torts 2d § 920A at 169 (Tent. Draft No. 19, March 30, 1973), does not apply to "payments made under an insurance policy which is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause." *Id.* at 167. None of the cases cited is truly in point except Hall v. Minnesota Transfer Railway Co., 322 F. Supp. 92 (D.Minn.1971); that decision does not bind us, and I find its reasoning unpersuasive.

What constrains me nevertheless to concur is that here we are governed not by federal common law but by statute. Under 45 U.S.C. § 55 the railroad is entitled to set off only the premiums, not what the premiums bought. This was recognized as long ago as Bangor & Aroostook R. Co. v. Jones, 36 F.2d 886 (1 Cir. 1929). If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement. See Thomas v. Humble Oil & Refining Co., 420 F.2d 793 (4 Cir. 1970). Short of this the remedy is for Congress—which would do still better to repeal the outmoded FELA and substitute a liberal plan of workmen's compensation, as it did in 1927 for longshoremen and harbor workers, 33 U.S.C. §§ 901–50. See Friendly, Federal Jurisdiction: A General View 129–30 (1973).

LUMBARD, Circuit Judge (dissenting):

I agree with Judge Friendly that Blake's recovery of hospital bills which had been paid in the first instance by

---

1. In recent years the subject has been discussed in a number of opinions, with divergent conclusions, and in a number of law review articles and notes, with various recommendations. In addition to the cases cited in the text of this opinion, see Cox v. Northwest Airlines, Inc., 379 F.2d 893 (7 Cir. 1967); United States v. Sommers, 351 F.2d 354 (10 Cir. 1965); O'Connor v. United States, 269 F.2d 578, 579 (2 Cir. 1959); Floyd v. Fruit Industries, 144 Conn. 659, 136 A. 2d 918 (1957); Plant v. Simmons Company, 321 F.Supp. 735 (D.Md.1970); Note, Income Taxes and the Computation of Lost Future Earnings in Wrongful Death and Personal Injury Cases, 29 Md.L.Rev. 177.

the railroad and not by Blake is shockingly unjust. I cannot agree, however, that Blake is nevertheless entitled to recover these amounts. Section 5 of the F.E.L.A., 45 U.S.C. § 55 was never intended to apply to situations such as the present one, see Hall v. Minnesota Transfer Railway Co., 322 F.Supp. 92 (D.Minn.1971), and the collateral source rule should not be interpreted to bar a set off by the railroad of the hospital bills paid by it. To permit recovery of these amounts would be to allow plaintiff double recovery and, to that extent, provide encouragement to an employee to incur needless hospital bills in order to gain a windfall. Such a result seems to me to be clearly contrary to public policy. We should not permit a judgment of a federal court to be the means of accomplishing such an injustice.

I also object to the district court's refusal to charge, at defense counsel's request, that any award that the jury might make would not be subject to income taxes. It is becoming increasingly apparent to those who try jury cases, as I do from time to time, that the question of whether any judgment will be diminished by taxes is a matter which is frequently given great weight in jury deliberations. Since it does affect the verdict, it is a matter regarding which the jury should be informed. It seems quite probable, for example, that in this case the judgment of $25,000—which seems overly generous in the light of plaintiff's injuries and only five months loss of earnings—was very likely due to one or more of the jurors feeling, erroneously, that any judgment would be considerably diminished by taxes. It is time for this court to re-examine its holding in McWeeney v. New York, N.H. & H. R.R. Co., 282 F.2d 34 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960), and require that the jury be instructed about the tax incidents of a judgment when request is made of the trial judge to do so. The Third Circuit has recently required the giving of an instruction of this nature, upon request,

in Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245 (3rd Cir), cert. denied, 404 U.S. 883, 92 S.Ct. 212, 30 L. Ed.2d 165 (1971). This is one way in which our courts can properly do something to curb escalating verdicts without subtracting one iota from a fair and just recovery of damages suffered.

For these reasons I would reverse the judgment and order a new trial.