**SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Appellee,**

v.

**Charles L. ALLEN, Appellee.**

No. 1082.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 2, 1975.

Rehearing Denied July 23, 1975.

Richard B. Miller, Diana E. Marshall, Baker & Botts, Houston, for appellant.

Donn C. Fullenweider, Robert B. Wallis, Haynes & Fullenweider, Houston, for appellee.

CURTISS BROWN, Justice.

This is an F.E.L.A. case.

Charles L. Allen (Allen or appellee) brought suit for injuries suffered in the course of his employment with Southern Pacific Transportation Company (Southern Pacific or appellant). The case is governed by the Federal Employers' Liability Act. 45 U.S.C. § 51 *et seq.* (1972). Allen pled six specific acts or omissions, which he alleged to be negligence and a proximate cause of the incident. He also pled res ipsa loquitur. Southern Pacific pled eight acts or omissions of Allen, which it alleged to be negligence and a proximate cause of the incident in addition to a general denial.

Southern Pacific also filed a motion in limine which in part sought to prevent references or testimony concerning medical expenses or the amount thereof. Appellant contended in its motion that it would demonstrate, by proper evidence, that its pay-ment of such expenses was not subject to the collateral source rule. This contention will be discussed later. The issues submitted and the answers of the jury were as follows:

1. Do you find from a preponderance of the evidence that, on the occasion in question, defendant, SOUTHERN PACIFIC TRANSPORTATION COMPANY:

(a)(1). failed to use such a device in attaching the steel pilings to the crane, as would have been used by a reasonably prudent person, under the same or similar circumstances?
ANSWER ("Yes" or "No"): 12—Yes

If you havve answered subpart (1) yes then answer subpart (2).

(2). do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of CHARLES ALLEN'S injuries?
ANSWER ("Yes" or "No"): 12—Yes

(b)(1). failed to use such a method of separating steel pilings as a reasonably prudent person would have used under same or similar circumstances?
ANSWER ("Yes" or "No"): 12—No

If you have answered subpart (1) Yes then answer subpart (2).

(2). do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of CHARLES ALLEN's injuries?
ANSWER ("Yes" or "No"): _____

(c)(1). failed to provide CHARLES L. ALLEN a reasonably safe place to work?
ANSWER: ("Yes" or "No"): 12—No

If you have answered subpart (1) yes then answer subpart (2).

(2) do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of CHARLES ALLEN'S injuries?
ANSWER ("Yes" or "No"): _____

By the term "a reasonably safe place to work" is meant such a place as an ordinary prudent person would have furnished under the same or similar circumstances.

You are instructed that defendant was under a duty to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, and this duty was a continuing one even though the work may have been fleeting or infrequent.

2. Do you find from a preponderance of the evidence that, on the occasion in question:

(a)(1). the plaintiff, Charles Allen, was instructed to signal the crane operator to move the pilings to the deep part of the ditch?

Answer ("Yes" or "No"): <u>No—12</u>

If you have answered subpart (1) "Yes" then answer (2)

(2). the plaintiff, Charles Allen, failed to follow his instructions, if any, to move the pilings to the deep part of the ditch?

Answer ("Yes" or "No"): _____

If you have answered subpart (2) "Yes", then answer subpart (3).

(3). Do you find from a preponderance of the evidence that such failure, if any, was negligent?

Answer ("Yes" or "No"): <u>No—12</u>

If you have answered subpart (3) "Yes", then answer subpart (4).

(4) Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the accident and injuries in question?

Answer ("Yes" or "No"): _____

(b)(1). The plaintiff, Charles Allen, failed to keep such a lookout for his own safety as would have been kept by an ordinarily prudent person in the same or similar circumstances?

Answer ("Yes" or "No"): <u>12—Yes</u>

If you have answered subpart (1) "Yes", then answer subpart (2).

(2). Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the accident and injuries in question?

Answer ("Yes" or "No"): <u>12—No</u>

(c)(1). The plaintiff, Charles Allen, was standing closer to the crane than a reasonably prudent person would have done under the same or similar circumstances?

Answer ("Yes" or "No"): <u>12—No</u>

If you have answered subpart (1) "Yes", then answer Subpart (2).

(2) Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the accident and injuries in question?

Answer ("Yes" or "No"): _____

If you have answered question(s) 2 or any of the subparts "yes", then answer the following question.

3. What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found. Answer by stating the percentage opposite each name.

SOUTHERN PACIFIC TRANSPORTATION COMPANY and/or any of its agents and/or employees ................ 65 %

CHARLES L. ALLEN .............. 35 %

In answering this question, you should consider only the negligence of SOUTHERN PACIFIC TRANSPORTATION COMPANY and/or any of its agents and/or employees and the negligence of CHARLES L. ALLEN which you have found to be a proximate cause of the occurrence; therefore, the percentage should add up to 100%.

4. What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate CHARLES L. ALLEN for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

Do not reduce the amount in your answer because of CHARLES L. ALLEN'S negligence, if any. Consider the following elements of damage, if any, and none other:

(a) physical pain and mental anguish in the past. Answer in dollars and cents, if any ................... $10,000.00

(b) Physical pain and mental anguish which, in reasonable probability, he will suffer in the future. Answer in dollars and cents, if any ......... $40,000.00

(c) Loss of earnings in the past. Answer in dollars and cents, if any .... $10,000.00

(d) Loss of earning capacity which, in reasonable probability, he will sustain in the future. Answer in dollars and cents, if any .............$103,000.00

TOTAL AMOUNT, in dollars and cents, if any: $163,000.00

Upon return of the verdict, and before it was accepted, Allen made a motion for judgment on the verdict. Southern Pacific, feeling that there was a conflict in the

findings, requested the jury be sent back for further deliberations. Appellant later filed a motion for judgment on the verdict, and alternatively, moved for a mistrial. The trial court denied appellant's motions and entered judgment for Allen. No mention was made in the judgment concerning the disregarding of any issue, the award of damages was not reduced by the answer to Special Issue No. 3, and the medical expenses were not disallowed except as to $5,229.38, which was an unreimbursed payment by Southern Pacific. This appeal was then perfected.

Appellant has raised five points of error. The first four are based upon the jury's answers to Special Issues Numbers 2(b)(2) and 3 and contend that the trial court erred in refusing: to send the jury back; to enter judgment for Allen reduced by thirty-five percent; to declare a mistrial; or to grant a new trial. The fifth point of error concerns the failure to totally disallow the award of medical expenses.

Allen was an employee of the bridges and building division of appellant. On May 29, 1969, he and others were engaged in work on the White Oak Bayou Bridge. They were in the process of removing pilings from a cofferdam. It was necessary that the pilings be separated in order to be returned under a leasing agreement that Southern Pacific had with a supplier. A crane connected to a pile driver was attached to the pilings and they were dropped against the ground next to the bridge to effect the separation. Allen was walking toward the crane on the bridge engaging in conversation with one of the foremen on the bridge when someone shouted. The foreman and Allen were parallel to the pilings and on a straight line with the crane. The pilings came loose from the pile driver and Allen was struck down by the pilings which kicked up and landed on top of him. The foreman was not hit.

■ As appellant's first four points are interrelated, they will be discussed togeth-er. It is first argued that the trial court violated Rule 301, Texas Rules of Civil Procedure, by failing to enter a judgment which conformed to the verdict. Southern Pacific contends that absent any proper motion under the above cited Rule, the trial court is without jurisdiction to disregard Special Issue No. 3. *Traders & General Ins. Co. v. Heath,* 197 S.W.2d 130 (Tex.Civ.App. —Galveston 1946, writ ref'd n. r. e.). Appellee's reply is that his motion for judgment in open court included the following language:

. . . and, then, Your Honor, following the instructions in Special Issue No. 3, which is a defensive issue, which we say, on the basis of the answer to Special Issue No. 2, the Court would have to disregard any answer to Special Issue No. 3 as a matter of law, and as a matter of law it is not applicable. It is simply a percentage factor on which there is no basis to apply in this case and on which there is no conflict.

He contends that this was sufficient as a Rule 301 motion and lack of notice was waived. We do not agree. A Rule 301 motion to disregard a jury finding may be based on a claim either that the finding has no support in the evidence, or that the finding is immaterial. *Eubanks v. Winn,* 420 S.W.2d 698 (Tex.Sup.1967). The motion presented by Allen sufficiently raised the latter ground. We believe, however, that there is no showing by appellee that the appellant had reasonable notice of the motion or understood the oral motion for judgment to be a motion to disregard the finding. *Traders & General Ins. Co. v. Heath, supra*; Tex.R.Civ.P. 301. Nevertheless, it is settled that a trial court may disregard a jury finding to a special issue, which is immaterial, upon its own motion. *Teas v. Republic National Bank of Dallas,* 460 S.W.2d 233 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). It is only when the issue is material, that the judgment must conform to the finding. *Massie v. Hutcheson,*

270 S.W. 544 (Tex.Com.App.1925, jdgmt. adopted).

■ Further, when a trial court does disregard answers to immaterial issues and render judgment, such judgment is not rendered non obstante veredicto. *T. A. Maning & Sons, Inc. v. Ken-Tex Oil Corp.,* 418 S.W.2d 324, 326 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). Therefore, if Special Issue No. 3 was immaterial then it was properly disregarded by the trial court. If it was not, then the trial court did not have jurisdiction to disregard it and committed reversible error. *Waters v. Bruner,* 355 S.W.2d 230 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.). Special Issue No. 3 is a comparative negligence issue which ordinarily is predicated upon findings of both negligence *and* proximate cause against the plaintiff. In the case at bar it was predicated upon an affirmative answer to *any* of the sub-parts of Special Issue No. 2 (which inquired about contributory negligence and proximate cause). Such an issue, when raised by the evidence, relates to an employer's rights to have damages diminished in proportion to the relationship that a plaintiff's employee's negligence bears to 100%. 45 U.S.C. § 53 (1972). It is true that this case is governed by Federal law and when assertions of Federal rights are plainly and reasonably made they are not to be defeated under the name of local practice. *Arnold v. Panhandle and Santa Fe Railway Co.,* 353 U.S. 360, 362, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957).

■ First, we hold that the submission of the comparative negligence issue in the F.E.L.A. context is not a submission of general contributory negligence. Both parties pled, raised by evidence, and submitted specific acts and omissions of primary and contributory negligence. The above cited section of the F.E.L.A. refers to diminution of damages not liability. We hold that this was a *damage issue* and since the appellant

failed to carry its burden on the contributory negligence theory, the diminution of damages issue was immaterial. *Missouri Pacific R. Co. v. Whittenburg & Alston,* 424 S.W.2d 427 (Tex.Sup.1968); *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, no writ). This is not the same sort of general submission of liability as in *Arnold v. Panhandle and Santa Fe Railway Company, supra;* See also *Missouri-Kansas-Texas RR. Co. v. Shelton,* 383 S.W.2d 842 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.) *cert. denied,* 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965). We believe that to find that this issue was a general submission of contributory negligence would be to engage in the sort of "metaphysical exercise" condemned by the Texas Supreme Court, albeit in a different context, in *Texas Employers' Insurance Ass'n v. Collins,* 156 Tex. 376, 295 S.W.2d 902, 905 (1956). Therefore, as the issue was immaterial, the trial court did not err in disregarding it; or deny appellant a Federal right under name of state practice; or err in failing to grant appellant's motion for judgment on the verdict.

What we have said concerning the "damage" issue nature of Special Issue No. 3 also suffices as an answer to a contention that there is a conflict between the comparative negligence issue and the preceding contributory negligence issue. As the issue is a damage issue and the appellant failed to carry the burden of proof on liability, then the damage issue and its findings do not have legal significance in terms of creating a conflict. *See Missouri Pacific R. Co. v. Whittenburg & Alston, supra.*

■ The question of a conflict therefore is illusory. If Special Issue No. 3 was a general submission of contributory negligence then any apparent conflict could be resolved as in *Arnold v. Panhandle and Santa Fe Railway Company, supra,* and appellant's first three points of error might be well taken. If, as we have held, it was not

a general submission of contributory negligence, then it would not be a liability issue and any answer to it could be disregarded as immaterial and of no legal significance in terms of creation of a conflict. *Howard v. Bachman*, 524 S.W.2d 414 (Tex.Civ.App.—Eastland 1975, no writ). The trial court did not err in refusing to send the jury back under Tex.R.Civ.P. 295, and did not err in refusing to grant a mistrial. Appellant's first four points of error are overruled.

■ Southern Pacific's final contention is that the trial court erred in permitting appellee to recover for medical expenses which it had previously paid. Appellee argues that appellant waived its right to recovery of same either through lack of pleading or through failure to complain of the underlying factual finding concerning the applicability of the collateral source rule. Appellee also argues that the collateral source rule is applicable to its recovery. It was stipulated that Southern Pacific paid $22,372.81 in medical expenses incurred by Allen as a result of the injuries suffered. Under the provisions of a policy of insurance, Travelers Insurance Company Policy No. GA 23000, $17,142.43 was reimbursed to the railroad. No question was raised by appellee concerning the $5,229.38 which was unreimbursed and allowed as a credit against the judgment. Evidence was heard by the court out of the presence of the jury panel. The question of the applicability of the collateral source rule was raised by a motion in limine filed by appellant. Payment and set-off were not affirmatively pled by Southern Pacific. Appellant did, however, file a general denial which places the burden on the plaintiff to prove entitlement to recovery of his damages. *Shell Chemical Co. v. Lamb*, 493 S.W.2d 742 (Tex. Sup.1973). Most importantly, the right plainly asserted with regard to the medical expenses was ineluctably tied to the employer's and employee's Federal rights under the F.E.L.A. As we noted above, the assertion of Federal rights, when plainly

and reasonably made, is not to be defeated under the name of local practice. Therefore, we must examine the merits of the contentions with regard to the collateral source rule and 45 U.S.C. § 55 (1972) in light of the interpretations of the Federal Courts.

In the context of an F.E.L.A. case, there is both the question of the common law collateral source rule and the effect of 45 U.S.C. § 55 (1972) which provides:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief. benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

*See Blake v. Delaware and Hudson Railway Company*, 484 F.2d 204 (2d Cir. 1973) (Friendly, J., concurring).

■ There is an apparent conflict in the Federal Courts concerning the treatment of proceeds under the GA 23000 policy. It is well established, however, that as to payments made by employers, it is the nature of the payments, not their source, which is determinative of the question of the applicability of the collateral source rule. *Haughton v. Blackships*, 462 F.2d 788 (5th Cir. 1972); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525 (9th Cir. 1962); *Hall v. Minnesota Transfer Railway Company*, 322 F.Supp. 92 (D.Minn.1971); *cf. Bangor & Aroostook R. Co. v. Jones*, 36 F.2d 886 (1st Cir. 1929).

In *Haughton v. Blackships, Inc., supra,* the Fifth Circuit outlined the considerations underlying the application of the collateral source rule:

> The policy considerations for the collateral source rule are apparent. On the one hand, an employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that purpose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor. *Haughton v. Blackships, supra,* at 791.

The GA 23000 is a group policy which provides coverage for both the employee and his family in addition to the "on-duty" injury coverage at issue here. The on-duty clause applies irrespective of the ultimate legal liability of the employer. *Cf. Thomas v. Humble Oil & Refining Co.,* 420 F.2d 793 (4th Cir. 1970). In *Hall v. Minnesota Transfer Railway Company, supra,* the Court pointed out that insurance would be for the benefit of the employer and not subject to the collateral source rule if it is written to cover only those injuries incurred on the job for which the employer might be liable by statute or common law. While the court there seemed to refer to the GA 23000 policy as a whole, we believe that the reasoning is applicable to the on-duty coverage. In *Thomas v. Humble Oil & Refining Co., supra,* the disability insurance encompassed in the collective bargaining agreement and seamen's article applied to maintenance, for which the ship is liable under common law, and therefore not subject to the collateral source rule. In *Blake v. Delaware and Hudson Railway Company,* 484 F.2d 204 (2d Cir. 1973) Judge Friendly, in his concurring opinion, took the view that § 55 would not permit the set-off of reimbursed payments under the insurance policy in question. In support of this, he cited *Bangor & Aroostook R. Co. v. Jones, supra,* which held that under § 55 the employer would only be entitled to recover the amount of the premiums actually paid by the railroad.

The collective bargaining agreement in this case between the union handling labor negotiations on behalf of appellee and the railroad expressly provides that amounts contributed by Southern Pacific are not "wage-equivalents". The appellant further presented evidence that it had long followed the policy of providing medical care for on-duty injuries. There is other evidence, however, that the provisions under discussion were obtained as a result of collective bargaining between the union and the railroad. The evidence would further justify the trial court in finding that the coverage provided constituted a fringe benefit despite the provision that they are not "wage-equivalents". The amount paid in to the fund under this coverage varies from time to time as it may be negotiated between the union, railroad and insurance company. We therefore hold that the trial court correctly applied the collateral source rule in this instance. We need not further consider, therefore, whether § 55 would have the effect of entitling the Railroad to set off only the premiums, not what the premiums bought.

Appellant's points have been carefully considered and they are overruled.

Affirmed.