Jeff **LEIGHTON,** Appellant,

v.

**CSX TRANSPORTATION, INC.,** Appellee.

No. 2009–CA–001158–MR.

Court of Appeals of Kentucky.

March 11, 2011.

Derek D. Humfleet, Lexington, KY, for Appellant.

Edward H. Stopher, Darryl S. Lavery, Thomas G. Goodwin, Louisville, KY, for Appellee.

Before ACREE, COMBS, and WINE, Judges.

## OPINION

ACREE, Judge:

Jeff Leighton appeals the Jefferson Circuit Court's denial of his motion for a new trial of his tort claim against his employer, CSX Transportation, Inc., on the ground that the jury was allowed to speculate about collateral source payments for medical expenses. The Jefferson Circuit Court denied the motion because the fund from which those medical expenses were paid was not a collateral source. We agree with the circuit court and affirm.

■ Leighton filed suit against CSX pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA, or "the Act"), for injuries he suffered in the course of his employment. In most cases, the employer that funds a disability benefit program such as workers' compensation cannot also be the tortfeasor because of statutory immunities. Liability under FELA, however, is one context in which the employer is allowed both to fund a workers' compensation benefit program and also be liable under a tort theory. In fact, § 5 of FELA voids "[a]ny contract, rule, regulation, or device whatsoever, [intended] to enable any common carrier [such as CSX] to exempt itself from any liability created" by the Act. 45 United

States Code (U.S.C.) § 55 (1908 & 2011 Supp.).

However, the same § 5 of the Act states That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

*Id.* Not surprisingly, this language yielded varied results among the federal courts interpreting the statute in the context of the collateral source rule. It is an issue of first impression for this Court.

■ Kentucky's Supreme Court recently explained the collateral source rule as follows.

It is improper to reduce a plaintiff's damages by payments for medical treatment under a health insurance policy if the premiums were paid by the plaintiff or a third party *other than the tortfeasor.* The collateral source rule, as this rule is commonly known, allows the plaintiff to (1) seek recovery for the reasonable value of medical services for an injury, and (2) seek recovery for the reasonable value of medical services without consideration of insurance payments made to the injured party. The collateral source rule has long been followed in Kentucky.

*Baptist Healthcare Systems, Inc. v. Miller,* 177 S.W.3d 676, 682–83 (Ky.2005) (emphasis supplied)(footnotes omitted). By this definition, if the premiums were paid by the tortfeasor-employer in this case, the collateral source rule would not apply. Although *Baptist Healthcare* was not a FELA case, it is consistent with § 5 of the Act. But federal courts interpreting FELA do not end the analysis there. Instead,

"[a]pplication of the collateral source rule depends more upon the character of the benefits than upon the source of the funds." *Patterson v. Norfolk and Western Ry. Co.,* 489 F.2d 303, 308 (6th Cir.1973) (FELA case).

■ Leighton's medical bills were paid, in part, on behalf of CSX under The Railroad Employees National Health and Welfare Plan (the Plan). Placing the issue of the collateral source rule under FELA squarely before the trial court, both Leighton and CSX filed motions *in limine* regarding those payments. Leighton wanted the trial court to prohibit any evidence that he "received payments from medical insurers or other collateral sources, or that his medical bills were paid by insurance." CSX wanted the trial court to limit evidence of Leighton's medical expenses to those which he paid out-of-pocket. Before the court ruled, the issue arose again when the parties submitted proposed jury instructions.

The trial court carefully considered the arguments of counsel and struck a balance. Leighton would be allowed to present evidence that his total medical expenses were $11,030.57. However, the jury instruction would include a limitation on the award of damages allowing Leighton to recover no more than $3,198.65, the amount of medical expenses not paid by the Plan.

The jury found CSX liable, awarding Leighton $3,198.65 for medical expenses, $5,280.00 for lost employment benefits and nothing for pain and suffering. The jury further found Leighton partially at fault and apportioned the damages equally between him and CSX for a total award of $4,293.33.

Leighton filed a motion for new trial arguing that any implication to the jury regarding payments from collateral sources is improper, including the limita-

tion in the instruction on his recovery of medical expenses.

The trial court denied his motion, citing the reasoning of *Lyons v. Southern Pacific Transp. Co.,* 684 F.Supp. 909, 911 (W.D.La.1988), and *Gonzalez v. Indiana Harbor Belt R.R. Co.,* 638 F.Supp. 308 (N.D.Ind.1986). Both of these cases acknowledge that federal courts have divided on whether payments under the Plan are subject to the collateral source rule in FELA actions. *Lyons,* 684 F.Supp. at 910; *Gonzalez,* 638 F.Supp. at 309–10; *see also Blake v. Delaware & Hudson Ry. Co.,* 484 F.2d 204, 207 n. 1 (2nd Cir.1973). Both then note the recent tendency of courts to conclude that, under § 5 of the Act, such payments are not from a collateral source, thereby allowing set-off, "when the payments were voluntarily undertaken by the employer to indemnify itself against possible FELA liability as opposed to payments classified as a fringe benefit." *Lyons,* 684 F.Supp. at 911; *see also Gonzalez,* 638 F.Supp. at 309–10. The question became how to distinguish between the two. The answer appears to have been provided by Judge Friendly in his oft-cited concurrence in *Blake v. Delaware & Hudson Ry. Co., supra.*

In *Blake,* the railroad was made to pay for its employee's medical treatment a second time when it was unable to establish that its insurance plan was not simply an employee fringe benefit. Judge Friendly said, "If the railroads wish to avoid the harsh result reached by the district court, they can accomplish this by specific provision in the collective bargaining agreement." *Blake,* 484 F.2d at 207 (Friendly, J., concurring). The railroads seem to have responded quickly.

Two years after Judge Friendly's suggestion, the collective bargaining agreement between the various railroad workers' unions and the railroads included the following language.

In case of an injury or a sickness for which an Employee who is eligible for Employee benefits and may have a right of recovery against the employing railroad, benefits will be provided under the Policy Contract, subject to the provisions hereinafter set forth. The parties hereto do not intend that benefits provided under the Policy Contract will duplicate, in whole or in part, any amount recovered from the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract, and they intend that benefits provided under the Policy Contract will satisfy any right of recovery against the employing railroad for such benefits to the extent of the benefits so provided. **Accordingly, benefits provided under the Policy Contract will be offset against any right of recovery the Employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the Policy Contract.** [Emphasis in original]

National Health and Welfare Agreement, Art. III, § A (October 22, 1975) (as excerpted in the Plan, p. 127). CSX directed the trial court's attention to this specific language in the Plan.

The courts in *Gonzalez* and *Lyons,* both quoting and attributing the same offset provision to the parties' collective bargaining agreement, considered this language "the kind of 'specific provision' referred to by Judge Friendly that would prevent the application of the seemingly harsh collateral source rule." *Gonzalez,* 638 F.Supp. at 310 (footnote omitted); *see also Lyons,* 684 F.Supp. at 911. The courts in both cases also relied on *Clark v. Burlington Northern, Inc.,* 726 F.2d 448 (8th Cir.1984), wherein that court said "the employer's

manifest intent to avoid double liability in offering disability plans must be respected if the collateral source rule is not to swallow up 45 U.S.C. § 55 at the ultimate expense of employees." 726 F.2d at 451.

We agree with the trial court. The Plan is not a collateral source.

Furthermore, in *Gonzalez* and *Lyons,* the respective courts prohibited the introduction of any evidence of medical expenses because each of the plaintiffs had "already been compensated for his medical expenses[.]" *Lyons,* 684 F.Supp. at 911; *see also Gonzalez,* 638 F.Supp. at 310. Unlike these cases, the trial court *sub judice* allowed Leighton to present evidence of all $11,030.57 in medical expenses while no evidence was presented explaining that CSX had already provided payment for all but $3,198.65 of the expenses. The propriety of allowing proof of medical expenses that the tortfeasor has already paid is not before us. We consider only whether the jury instruction limiting Leighton's recovery to his out-of-pocket expenses was improper.

■■■ Alleged errors regarding jury instructions are questions of law that we examine *de novo. Reece v. Dixie Warehouse & Cartage Co.,* 188 S.W.3d 440, 449 (Ky.App.2006).

> The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict. If the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury.

*Ballback's Adm'r v. Boland–Maloney Lumber Co.,* 306 Ky. 647, 652–53, 208 S.W.2d 940, 943 (1948).

■■ Leighton's argument that the jury instruction was improper is premised entirely on the pre-supposition that the Plan was a collateral source. Since we conclude it was not, Leighton's argument cannot be sustained.

Furthermore, the cases Leighton cites do not otherwise support his argument. *Thomas v. Greenview Hospital, Inc.* and *Beckner v. Palmore* do not address jury instructions, but stand for the rule that a plaintiff must be permitted to present evidence of the entirety of his medical expenses, even those paid by a collateral source. *Thomas v. Greenview Hospital, Inc.,* 127 S.W.3d 663 (Ky.App.2004), *overruled on other grounds by Lanham v. Commonwealth,* 171 S.W.3d 14 (Ky.2005); *Beckner v. Palmore,* 719 S.W.2d 288 (Ky. App.1986). Leighton was allowed to present evidence of expenses that were paid by a *non*-collateral source—the tortfeasor. If the jury was confused about the disparity between the evidence of medical expenses ($11,030.57) and the total the jury was permitted to award ($3,198.65), it was because Leighton presented proof of unrecoverable medical expenses.

Because collateral source payments were not an issue in this case, Leighton's reliance on *Drury v. Spalding,* 812 S.W.2d 713 (Ky.1991), is also misplaced. Leighton quotes *Drury* for the proposition that "[t]here was no valid reason for the jury to be told [he] was not entitled to recover a portion of h[is] medical expenses." *Drury,* 812 S.W.2d at 717. In the case before us, there was a valid reason—the collateral source exception did not affect the "strong public policy in this Commonwealth against double recovery for the same elements of loss." *Hardaway Management Co. v. Southerland,* 977 S.W.2d 910, 918 (Ky.1998).

We conclude that the trial court was correct to rely on *Lyons* and *Gonzalez* in its order denying Leighton's motion for new trial. Given that the Plan was not a collateral source of payment for Leighton's

medical expenses, there was no error in the jury instruction that limited Leighton to recovery of his out-of-pocket expenses only. Therefore, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.